Monahan v. Mutual Life Ins. Co. 192 Wis. 102.

Monahan, Respondent, vs. Mutual Life Insurance Company of New York, Appellant.

*January 10—February 8, 1927.*

*Insurance: Fraud in application: False statements by applicant: Intent to deceive: Burden of proof: Materiality of false statements: Evidence: Sufficiency.*

1. Under sec. 209.07, Stats., an insurance company, in order to maintain the defense that the insured was not in proper health and not a fit subject for insurance at the time a policy was issued, must first establish that the certificate of its medical examiner was procured through the fraud or deceit of the insured. p. 106.
2. Mere false statements by the insured in an application for life insurance, although constituting an element of fraud, do not always constitute fraud or deceit, as ordinarily the false statements must be material, and they must be relied on in order to constitute fraud, since "false" may mean untrue, or it may mean designedly untrue, implying an intention to deceive. p. 107.
3. Under sec. 209.06, Stats., it is not sufficient as a defense to an action on a life insurance policy to prove that statements made by the insured in the application were merely false, but it must also appear that they were made with actual intent to deceive. p. 107.
4. The evidence in this case is *held* to disclose an actual intent on the part of the insured to deceive the insurer and that the statements increased the risk so as to preclude recovery by the beneficiaries under secs. 209.06 and 209.07, Stats. pp. 108, 109.
5. Statements made by the insured are not immaterial on the ground that the medical examiner relied entirely on his own examination, since insurance companies, in determining the fitness of an applicant, rely not only on the physical examination, but on the history of the applicant so far as it has relation to his health. p. 109.

Appeal from a judgment of the circuit court for Rock county: George Grimm, Circuit Judge. *Reversed.*

This is an action by the beneficiary to recover on a life insurance policy issued by the appellant upon the life of Bessie Monahan, daughter of the beneficiary. The insured, during the school year of 1923–1924, was a teacher in a grade school about four miles from Janesville. She frequently

walked one way. Her school closed June 6th. On June 13, 1924, she consulted Dr. J. F. Pember of Janesville, to whom she disclosed the following symptoms: During the three months prior to the date of her consultation she had decreased in weight from 130 to 117 pounds. Five weeks prior to the consultation she commenced to vomit. The vomiting continued for a period of three weeks, but did not occur during the last two weeks. She had a great deal of weight and distress at the stomach and a good deal of nausea, and complained of constipated bowels. There was pain over the appendicital region. Dr. Pember diagnosed her illness as appendicitis, prescribed a general tonic, laxative diet, and recommended and advised an operation for appendicitis.

On July 7, 1924, twenty-four days after such consultation with Dr. Pember, the insured applied to the appellant insurance company for insurance, and on July 8th presented herself to Dr. F. B. Farnsworth of Janesville, the local medical examiner for the appellant, for a medical examination pursuant to such application for insurance. As a part of such examination she made written answers to various questions concerning her health history, among which were the following:

"16. What illnesses, diseases, injuries, and surgical operations have you had since childhood?

      Name of disease, etc.—Tonsillectomy.
      Number of attacks—One.
      Date of each—January, 1923.
      Duration—Three weeks.
      Complications—None.
      Any remaining effects—None.
      Date of complete recovery—January, 1923.

"17. State every physician or practitioner who has prescribed for or treated you, or whom you have consulted in the past five years for any ailment, serious or not serious.

      Name of physician or practitioner—Dr. Floyd Shuer.
      Address—Edgerton, Wis.
      When consulted—January, 1923.
      Nature of complaint. Give full details above under
      question 16—Tonsillectomy.

"18. Have you stated in answer to question 16 all illnesses, diseases, injuries, and surgical operations which you have had since childhood? (Answer Yes or No.) Yes.

"19. Have ·you stated in answer to question 17 every physician and practitioner consulted during the past five years and dates of consultations? (Answer Yes or No.) Yes.

"20. (a) Are you in good health? Yes.

(b) If not, what is the impairment? ———."

On the night of July 9th, the day after her medical examination pursuant to her application for insurance, she went to a dance at Beloit, and the following morning suffered severe vomiting spells and pains in her abdomen. Dr. Guy C. Waufle was called, concluded she was suffering from appendicitis, and advised an operation, which was performed in the afternoon of that day, being July 10th. The operation disclosed a mass or growth on the right side of the abdomen, in the region of and partially enveloping the appendix. The appendix was removed and the adhesions from the mass were separated. The operation disclosed that the difficulty was not primarily appendicitis but tubercular peritonitis. On July 21st she was discharged from the hospital, returned to her home, and there, as she gradually recuperated, assumed her duties about the household. She commenced teaching school in the fall, but in November of the same year her original trouble recurred. She was again subject to abdominal pain, commenced vomiting, and on December 18, 1924, went to Chicago to consult Dr. George W. Thilo. About a week later Dr. Thilo operated upon insured and discovered that her trouble was tubercular peritonitis, from which she died on January 7, 1925.

The appellant defended the action on the ground that the insured had misrepresented her physical condition to its medical examiner and had made false answers to the questions heretofore set forth. This defense was met by the contention on the part of the plaintiff that the insured had not

consulted Dr. Pember on June 13th, but that it was Kitty Monahan, sister of the insured, who consulted Dr. Pember. Whether it was the insured, Bessie Monahan, or her sister, Kitty Monahan, who consulted Dr. Pember on June 13th was the principal question litigated at the trial.

The jury returned the following special verdict:

"(1) Did the insured in her answer to the medical examiner, Dr. Farnsworth, on the 8th day of July, 1924, falsely state that the only illness, disease, injury, and surgical operation which she had since childhood was tonsillectomy? *A.* Yes.

"(2) Did the insured at her examination on the 8th day of July, 1924, falsely state to Dr. Farnsworth that she was in good health? *A.* No.

"(3) Did the insured at her examination on the 8th day of July, 1924, falsely state to Dr. Farnsworth that her weight had remained constant for four years? *A.* Yes.

"(4) If you answer either of the foregoing questions in the affirmative, then answer this: Were such false statements made by the insured with the actual intent to deceive? *A.* No.

"(5) Did the insured at the time of her examination on July 8, 1924, by Dr. Farnsworth have tubercular peritonitis? *A.* Yes.

"(6) If you answer question 5 in the affirmative, then answer this:

"(a) Had she, prior to July 8, 1924, been informed by any doctor that she had that disease? *A.* No.

"(b) Did such ailment increase the risk or contribute to produce her death? *A.* Yes.

"(7) Was the insured at the time of the delivery of the policy to her in good health? *A.* Yes.

"(8) Was the report of the medical examiner to the company that the insured was a fit subject for insurance procured by or through fraud? *A.* No."

The appellant moved to change the answer to question 2 from No to Yes, to question 4 from No to Yes, to question 7 from Yes to No, to question 8 from No to Yes, and for judgment notwithstanding the verdict; and if those motions

·be denied, for a new trial for various specified reasons, which need not be set forth. The court rendered judgment in favor of the plaintiff, from which the defendant brings this appeal.

For the appellant there were briefs by *Miller, Mack & Fairchild* of Milwaukee, attorneys, and *Frederick L. Allen* of New York City, of counsel, and oral argument by *Bert Vandervelde* of Milwaukee.

For the respondent there was a brief by *Fiedler, Garrigan & Amlie* of Beloit, and oral argument by *E. C. Fiedler.*

OWEN, J. It is conceded that the medical examiner of appellant issued a certificate of health declaring the applicant a fit subject for insurance and so reported to the company. Appellant defends this action on the ground that the insured was not in proper health and was not a fit subject for insurance either at the time of the application or at the time of the issuance and delivery of the policy. By the provisions of sec. 209.07, Stats., the appellant is estopped "from setting up in defense of an action on such policy or certificate that the insured was not in the condition of health required by the policy at the time of the issue or delivery thereof, unless the same was procured by or through the fraud or deceit of the insured." In order to maintain the defense upon which appellant relies, it is incumbent upon the appellant to first establish that the certificate of the medical examiner was procured through "the fraud or deceit of the insured."

It is conceded that the answer returned by the jury to question 1 of the special verdict is equivalent to a finding that it was Bessie, the insured, and not Kitty, her sister, who consulted Dr. Pember on June 13th. While this finding of the jury is assailed by the respondent as being contrary to the great weight of the evidence, it is not contended that the verdict finds no support in the evidence. As a matter of fact there is an abundance of evidence to support the answer returned by the jury to question 1, and the verdict in this respect must be regarded as a verity. From this it follows,

necessarily, that the answers of the insured made to the questions set forth in the statement of facts were false.

But this fact alone does not establish the defense relied upon. Mere false statements do not always constitute fraud or deceit. While false statements constitute an element of fraud growing out of misrepresentations, other elements must concur. Ordinarily the false statements must be material, and they must be relied upon in order to constitute fraud. " 'False' may mean untrue, or it may mean designedly untrue, implying an intention to deceive, as when it is applied to the representations of one inducing an act to another's injury." 12 Ruling Case Law, 230. Sec. 209.06, Stats., provides that—

"No oral or written statement, representation, or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, or prevent its attaching unless such statement, representation, or warranty was false and made with actual intent to deceive or unless the matter misrepresented or made a warranty, increased the risk or contributed to the loss."

This section applies to all oral or written statements made in the negotiation of a contract of insurance. While sec. 209.07 deals specifically with the certificate of health and estops the company from going back of that certificate unless the same was procured by or through the fraud or deceit of the insured, we cannot ignore the provisions of sec. 209.06 in determining what constitutes such fraud and deceit. By the latter section it is not sufficient to prove that the statements were merely false. It must appear that the false statements were made with actual intent to deceive. The jury found that the report of the medical examiner for the company that the insured was a fit subject for insurance was not procured by or through fraud or deceit on the part of the insured. If this finding is supported by the evidence it defeats the defense that the insured was not in the condition

of health required by the policy at the time of the issuance or delivery thereof. Appellant assails this finding of the jury and contends that it is not only unsupported by any evidence but that the contrary appears as a matter of law.

In submitting the first question of the special verdict, which inquired whether "the insured in her answer to the medical examiner, Dr. Farnsworth, on the 8th day of July, 1924, falsely stated that the only illness, disease, injury, and surgical operation which she had since childhood was tonsillectomy," the court instructed the jury as follows:

"In connection with this question, and also questions 2 and 3, which I shall read in a moment, you are instructed that the word 'falsely' as used in each of these questions is used in the sense of 'not true,' if at the time the insured made the untrue statements she knew them to be untrue."

The jury could not have answered questions 1, 2, and 3 as they did unless they found that at the time the insured made the false statements which the jury found she did make the insured knew that such false statements were untrue. It appears, therefore, that the insured not only made false statements to the medical examiner concerning the condition of her health, but that she made them knowing them to be false. The insured was a school teacher, a person of at least ordinary intelligence, and she undoubtedly knew that to reveal the fact that she was ailing with or threatened by appendicitis or any similar or allied disease, or any trouble which a reputable physician had diagnosed as appendicitis, would greatly endanger her prospects of securing an insurance policy upon her life, and the only sensible reason that can be assigned for her deliberate false answers was to keep her condition of health from the knowledge of the insurance company. If the circumstances of this case do not prove beyond doubt an actual intent to deceive, it is difficult to understand how such an intent may be proved in such cases. The insured is dead. She cannot be questioned. Her intent must be inferred from what she did under all the circumstances.

We can conceive of no inference consistent with an innocent purpose on the part of the insured that can be drawn from these facts and circumstances. It is impossible to indulge the thought that her suppression of the damaging facts was due to a lack of memory or mere inadvertence. Her illness was so recent, and the advice which she received from Dr. Pember concerning her health was of so grave a nature, that it must have given her more than passing concern and left an impression upon her mind and memory that could not have faded within a period of three weeks. We hold that the evidence discloses as a matter of law an actual intent on her part to deceive the defendant company.

Respondent contends that the medical examiner for the appellant did not rely upon her statements, but relied entirely upon his own examination, and that therefore her statements are not material. This contention cannot be sustained. It is well known that insurance companies, in determining whether an applicant is a fit subject for insurance, rely not only upon a physical examination, but upon the history of the applicant so far as it has relation to the applicant's health. In *McGowan v. Supreme Court of Independent Order of Foresters,* 104 Wis. 173, 183, 80 N. W. 603, speaking of similar statements made by an applicant for insurance, this court said:

"All of the questions as to the health or death, or age at death, of the ancestors or brothers and sisters of the deceased, were material to the risk as matter of law, and the court should have so declared."

The jury found that the ailment from which the insured was actually suffering, tubercular peritonitis, did increase the risk or contributed to produce her death. True, this question had reference to tubercular peritonitis. She did not know that she had tubercular peritonitis. She did know, however, that she had a severe ailment, which had been diagnosed as appendicitis. It does not require either expert testimony or the verdict of a jury to establish the fact that her ailment as

diagnosed increased the risk. This is a matter of common knowledge. Furthermore, the testimony of three physicians, through whose hands applications for insurance in the appellant company generally pass, testified without contradiction that the disclosure of the facts within the knowledge of the insured would have resulted in a rejection of her application. We therefore conclude that the false statements made by the insured were made with actual intent to deceive, that they increased the risk and contributed to the loss.

The respondent has urged upon our attention the case of *Roe v. National Life Ins. Asso.* 137 Iowa, 696, 115 N. W. 500, and quotes language from the opinion to the effect that such false statements made by an applicant for insurance may not be relied upon as a defense to an action to recover upon the policy under statutes similar to the statutes of this state herein referred to. A reading of that case convinces us that the Iowa court would come to the same conclusion here reached under the same circumstances. In that case the insured made no representations to the medical examiner. It appears that "the defendant's agent prepared the application from information obtained from another application the insured had made to another company some time previous, and, by representing to him that the application was prepared according to the association's requirements, induced him to sign it. The application was prepared in connection with many others, and the manner of doing so was with the consent of the secretary of the defendant association." Furthermore, the court emphasizes the fact that the examining physician testified that he would not have been influenced in his action on the application even though the statements made by the insured had been truthful. That case is in no respect similar to this.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the complaint.