JESPERSEN and wife, Respondents, vs. METROPOLITAN LIFE
INSURANCE COMPANY, Appellant.

*May 14—June 10, 1947.*

2

For the appellant there were briefs by *Bloodgood & Passmore* and *William E. Burke,* all of Milwaukee, and oral argument by *Mr. Burke.*

For the respondents there was a brief by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann.*

WICKHEM, J.   Some time prior to January 22, 1943, insured, then about eighteen years of age, enlisted in the navy. Shortly thereafter he was examined by a naval medical examiner and his condition diagnosed as "Tuberculosis Pulmonary Chronic Active No. 1103, Incipient."   The medical proceed-

ing was completed on January 26, 1943, and the determination made that insured was not physically qualified to remain in the service. A certificate of discharge was delivered to him stating as reasons for discharge physical disqualifications and certifying that insured was not physically qualified for enlistment. Assured arrived at his home about February 1st and on March 4th and March 11th signed parts "A" and "B," respectively, of the application for life insurance in defendant. On April 1st defendant issued a policy upon the life of insured. A copy of the application was attached to the policy and made a part thereof. In it insured represented that he had never had any ailment or disease of the lungs. In connection with his discharge from the navy insured signed a certificate to the effect that tuberculosis pre-existed his enlistment in the navy. After the application on March 11, 1943, insured was given a complete physical examination by defendant's medical examiner. He found no evidence of disease or impairment of the lungs and so reported. The medical director of defendant testified that the policy would not have been issued had the facts concerning insured's experience in the navy been disclosed. The trial court considered that sec. 209.07, Stats., was applicable to the situation. Sec. 209.07 provides:

"If the medical examiner of any life or disability insurance company shall issue a certificate of health, or declare the applicant a fit subject for insurance, or so report to the company or its agent under the rules and regulations of such company, it shall thereby be estopped from setting up in defense of an action on a policy issued thereon that the insured was not in the condition of health required by the policy at the time of the issue or delivery thereof, unless the same was procured by or through the fraud or deceit of the insured. . . ."

The trial court considered that all the conditions were present to bring sec. 209.07, Stats., into operation and therefore submitted to the jury a single question, whether the statement made by the insured in his application that he had never had

any ailment or disease of the lungs was made with intent to deceive defendant. We are of the view that the trial court was in error in this conclusion. The law applicable to the situation is stated in *Frozena v. Metropolitan Life Ins. Co.* 211 Wis. 373, 376, 247 N. W. 333. It is there said that "where a medical examination is had *and a report made that the applicant is a fit subject for insurance,* an estoppel arises against the company in the absence of fraud or deceit practiced by the insured upon the medical examiner in order to induce a favorable report." It is pointed out in the opinion that sec. 209.07 does not apply where a medical examiner merely enters his findings with respect to the physical examination and forwards them to the company without comment. In such situations sec. 209.06, avoiding the policy where an innocent misrepresentation increases the risk, is to be applied. *Demirjian v. New York Life Ins. Co.* 205 Wis. 71, 236 N. W. 566. In the *Frozena Case, supra,* the medical examiner was asked to characterize the risk as "first class, average, doubtful or poor" and he characterized it as "first class." This amounted to a declaration that the applicant was a fit subject for insurance and brought sec. 209.07 into operation. An examination of the report of the medical examiner in this case indicates that no such declaration or recommendation was made. The medical examiner simply certified height, weight, measurements, pulse, and blood pressure and that he had found no evidence of impairment of the heart, brain, stomach, lungs, etc. These answers were all in response to specific questions required to be answered by the medical examiner and there is nowhere in the record, so far as we can discover, a certification of health or declaration that the applicant is a fit subject for insurance. Under these circumstances sec. 209.06 applies to make an innocent representation by insured which increases the risk a circumstance avoiding the policy. Hence, while we consider that the jury's finding as to intent to deceive is supported by the evidence, we need not labor this point because the point

becomes immaterial. This, however, does not dispose of the case. In order to establish a defense under sec. 209.06 it is necessary to establish a misrepresentation of fact, and in order to establish the latter it must be shown that insured had tuberculosis. We consider that this issue was not tried and that it cannot be disposed of as a matter of law. There is not the slightest evidence that insured ever was disabled during his lifetime by any disease. He appears to have been a strong, healthy person engaged in active, heavy physical work up to the time of his death. He did not die of tuberculosis but was killed in a motorcycle accident. It was sought to be proved that he had had tuberculosis by introducing the deposition of a naval medical officer. This officer was senior member of the board of medical survey in the training station where insured reported and worked in the receiving unit where new recruits were received. He produced in connection with his deposition, photostatic copies of the medical record of insured, as well as a certified copy of the paper signed by insured containing the statement that his disability antedated his enlistment. The medical record indicates fluoroscopic examinations of the lungs with certain markings "apparently due to a chronic active pulmonary tuberculosis, incipient in type." The medical history bears the signature of deponent. In the course of naval routine insured would come before the board of which deponent was a member for a conference during which he would be informed that he had pulmonary tuberculosis. Deponent did not examine insured and in fact was a urologist and did not examine the heart or lungs. He testified, however, that he personally examined all such X rays as were involved in the case of the insured. It is evident that deponent testified as a bookkeeper or any other routine worker might testify and not from a specific recollection or a recollection refreshed from the documents, but from a knowledge of his own general habits and practice. This constitutes some evidence that insured had tuberculosis but it is far from conclusive and the testimony of

the medical examiner for the insurance company and his medical report to the effect that he could discover no evidence of any disease of the lungs sufficiently puts the matter in issue. The burden on this issue was upon defendant and plaintiffs needed only to raise a legitimate doubt in the minds of the jury. We hold that upon the record a jury could entertain such a doubt and that there was an issue of fact whether insured had had tuberculosis. In this connection it should be pointed out that in most of the cases where questions of this sort arise the insured has within a short time of the examination died of the very disease to which his alleged misrepresentation relates. The question whether insured had tuberculosis was not submitted to the jury and neither the form of the special verdict nor the instructions of the court directed the attention of the jury to this issue. While no request was made by either party that this controverted matter be submitted to the jury we are unable to apply sec. 270.28, providing that "when some controverted matter of fact not brought to the attention of the trial court but essential to sustain the judgment is omitted from the verdict, such matter of fact shall be deemed determined by the court in conformity with its judgment." In this case the submission to the jury was upon an erroneous theory of law and it cannot be supposed that the trial court made any finding on the issue at all since according to his theory of the case it was wholly immaterial. There is applicable to the situation the following statement by this court in *Mullen v. Larson-Morgan Co.* 212 Wis. 52, 60, 249 N. W. 67:

"It is said in *Smith v. Poor Hand Maids of Jesus Christ,* 193 Wis. 63, 68, 213 N. W. 667, that when neither counsel nor court conceived the vital issue of a case there should be a new trial. The word 'conceive' implies a proper conception. In the cited case both counsel and court considered the only issue to be the statute of limitations, whereas the primary issue was whether under the facts liability ever existed at all, and, there being no submission of that issue, a new trial was ordered. With at least equal reason should a new trial be ordered where the vital issue is not covered by a question improperly con-

ceived by court and counsel as covering it. It is a misuse of sec. 270.28 to submit a case to the jury on one theory and then resort to the section and dispose of it on another theory. *Cooper v. Huerth,* 156 Wis. 346, 146 N. W. 485. We conclude that we cannot uphold the judgment on an implied finding of the circuit judge."

From the foregoing it follows that judgment must be reversed, and cause remanded for a new trial.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.