LUDWIG, Trustee, Respondent, vs. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant.*

*December 7, 1955—January 10, 1956.*

* Motion for rehearing denied, with $25 costs, on March 6, 1956.

550

For the appellant there were briefs by *Bloodgood & Pass-more, John P. Roemer,* and *Charles H. Galin,* all of Milwaukee, and oral argument by *Mr. Roemer.*

For the respondent there was a brief and oral argument by *Henry S. Reuss* and *Carl J. Ludwig,* both of Milwaukee.

BROADFOOT, J.   Prior to the trial before Judge NEELEN the defendant, upon three occasions, moved for leave to file an amended answer to set up as an additional defense an allegation that between the date of the application and the date of the delivery of the policy the insured had consulted two physicians in Milwaukee; that as a result of said consultations the insured knew on the date of the delivery of the policy that his health had changed for the worse and that he failed to disclose said information to the defendant. The motions were denied in each instance. The motions were

grounded on the provisions of sec. 269.44, Stats., the defendant claiming that in furtherance of justice the amendment should be permitted. It further contended that at the time Judge GEHRZ withdrew the case from the jury he directed that amendments be made to the pleadings. Judge GEHRZ did indicate that the pleadings should be amended, and on November 17, 1954, he allowed each side ten days within which to file additional pleadings and amendments. This was some time before the mistrial was ordered. No amendments were tendered to Judge GEHRZ, the first motion for leave to amend being made before Judge NEELEN in January, 1955, after the case had been assigned to his court for trial.

In support of the motions, the defendant at no time claimed that it was ignorant of the facts sought to be pleaded by the amendment when the original answer was drafted and served. An application for leave to amend a pleading in furtherance of justice without any showing of newly discovered facts or excusable neglect is addressed to the discretion of the trial court.

A careful review of the record indicates that under the circumstances here present the trial court did not abuse its discretion.

There are references in the record to a visit by the insured to his physician on July 30, 1953, and a visit to another physician on August 20, 1953; also that the insured was admitted to Columbia Hospital on the evening of August 25, 1953; that he was discharged therefrom on August 26, 1953, and on the same day went to the Mayo Clinic at Rochester, Minnesota. The defendant made offers of proof, through the two physicians and by way of the hospital records at Columbia Hospital, that would tend to prove the facts alleged in the proposed amended answer. The trial court ruled that under the issues raised by the pleadings, evidence of occurrences after July 24, 1953, was immaterial. The

defendant cites the following provision appearing in Part A of the application:

"A. The foregoing statements and answers are complete, true, and correctly recorded, and with Part B of this application, shall form the basis for and be a part of any contract of insurance. B. If the full first premium at the company's published rates, according to the interval of premium payment selected, was not paid when this application was signed, the contract of insurance shall take effect as of the date of issue of the policy, but only upon the delivery to and receipt by me of the policy and the payment of the said first premium and only if at the time of such delivery and payment all statements set forth in Parts A and B of this application are then true."

This provision was inserted in the proposed amended answer but did not appear in the original answer. The application, however, was made a part of the record. The defendant, therefore, contends that the proof offered was relevant under the original answer and would constitute a defense to the action. However, the sole issue raised by the pleadings was the claim that statements and representations by the insured in the application were false in the following respects:

One of the questions appearing in the application was whether the insured had been X-rayed during the five-year period prior to the application. The answer to that question was in the affirmative. Opposite that answer appeared the following: "Navy exam. 1945. Nor." The application further indicated that the insured had an electrocardiogram in 1951 and that it showed a normal condition. The application further indicated that the insured had not otherwise consulted, been treated, or examined by any physician or practitioner within said five-year period. Upon the trial the plaintiff admitted that during the five-year period prior to the application for insurance the insured had four chest X rays,

one by a mobile street unit operated by the state and three by physicians. The testimony indicates that these X rays were taken for checkup purposes in response to general advice that everyone should have yearly chest X rays to discover tuberculosis. There is no evidence in the record that the X rays were positive or that any treatment was given the insured by the physicians. Sec. 209.07, Stats., reads:

"If the medical examiner of any life or disability insurance company shall issue a certificate of health, or declare the applicant a fit subject for insurance, or so report to the company or its agent under the rules and regulations of such company, it shall thereby be estopped from setting up a defense of an action on a policy issued thereon that the insured was not in the condition of health required by the policy at the time of the issue or delivery thereof, unless the same was procured by or through the fraud or deceit of the insured. This section shall apply to fraternal benefit societies."

The record indicates that the insured was examined by a medical examiner of the defendant on July 24, 1953, and that the examiner in effect declared the applicant a fit subject for insurance. Thus the issue to be determined was whether or not the insured obtained the policy of insurance by fraud or deceit. In other words, did the insured make false statements in the application with intent to deceive the defendant? Events transpiring after July 24, 1953, were not relevant under this issue. No proof was offered that the insured consulted with or was treated by a physician for any ailment during the period of five years. We cannot see, from this record, that the trial court erred in excluding the proof offered.

The defendant further contends that inferences may be drawn from the evidence in the record that are sufficient to require a reversal and dismissal of the complaint. Inferences might be drawn from the present record that would have supported a different finding by the jury. On the other hand,

there was evidence that amply sustains the jury's answer that the insured did not make a false answer to a question in the application when he did not state that he had consulted two physicians within the five-year period prior to the date of the application. It is not contended by the defendant that the record does not support the jury's answer. The inferences that defendant claims could be made from the record at best created a jury question that was resolved by the jury against it.

Finally, the defendant contends that the alleged errors by the trial court, upon which the prior arguments were based, violated the defendant's constitutional rights. It is argued that the provision from the application which is quoted above, together with certain provisions in the policy, made the answers in the application continuing representations; that because the insured consulted physicians after the date of the application and before delivery of the policy without notifying the defendant, no contract of insurance ever came into existence; therefore, the trial court, by its rulings and judgment, has imposed a contractual liability upon the defendant where in fact none existed. This contention was not pleaded or raised in the lower court, and is based upon argument and not upon the record. Its contention here cannot be sustained.

*By the Court.*—Judgment affirmed.