PLÀTKE, Respondent, v. John Hancock Mutual Life Insurance Company, Appellant.*

*February 5—March 2, 1965.*

* Motion for rehearing denied, with costs, on April 27, 1965.

For the appellant there were briefs by *Quarles, Herriott & Clemons,* attorneys, and *L. C. Hammond, Jr.,* and *John S. Holbrook, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Hammond.*

For the respondent there was a brief by *Frisch, Dudek & Banholzer,* attorneys, and *Robert A. Slattery* of counsel, all of Milwaukee, and oral argument by *Mr. Slattery.*

GORDON, J.   The underlying purpose of the legislature in enacting sec. 209.07, Stats., can be learned from declarations of the Iowa supreme court. This is true because our statute, adopted in 1911, was derived from the Iowa statute, enacted in 1897. In *Weimer v. Economic Asso.* (1899), 108 Iowa 451, 453, 79 N. W. 123, that court set out the purposes of the statute:

"The very evident purpose of the statute is to prevent the defeat of recovery on any policy where the company has, by its skilled agent, examined and passed upon the fitness of the applicant for insurance. The estoppel is directed to inquiry as to the condition of health, and it is quite immaterial what representations have been made or warranties given. The company, having investigated, and for itself ascertained and declared the condition of the assured to be such as required by its rules and regulations, will not be permitted to interpose as a defense the physical infirmities of the deceased, of which it knew, or might have known, as the result of its examination; and the fraud or deceit referred to is that of procuring the report or certificate of the physician, and not the policy, . . ."

Our own decisions have made it clear that if sec. 209.07, Stats., applies, it takes precedence over sec. 209.06; thus, an insurance company which has had its medical examiner conduct the kind of examination contemplated by the statute will be estopped unless the applicant procured the favorable report of the medical examiner by fraud or deceit. This was the conclusion reached in *Frozena v. Metropolitan Life Ins. Co.* (1933), 211 Wis. 373, 376, 247 N. W. 333:

"There seems to be no escape from the conclusion that where a medical examination is had and a report made that the applicant is a fit subject for insurance, an estoppel arises against the company in the absence of fraud or deceit practiced by the insured upon the medical examiner in order to induce a favorable report, and that the provisions of sec. 209.06 avoiding the policy where an innocent misrepresentation increases the risk, must be limited to situations where there has been no certificate of health or recommendation of the risk by the examiner."

The jury in the instant case determined that Wallace Platke made a false representation relative to his not having consulted or been treated by a doctor during the previous five years but that such representation was not made with an intent to deceive. The appellant contends that his misrepresentation should be held by this court as disclosing an intent to deceive as a matter of law. If the appellant is correct in that position and such deception induced the doctor's favorable report, then, in such event, sec. 209.07, Stats., would not apply, and the insurer would be entitled to prevail on its defense under sec. 209.06. We will examine the question as to whether there was deceit as a matter of law after first resolving the question whether the medical report constituted a certificate of health or a declaration that the applicant was a fit subject for insurance under sec. 209.07.

*Effect of the Medical Examiner's Report.*

In order to qualify as a certificate of health or a declaration of fitness, the report of the medical examiner need not be couched in those precise terms. That this is true is demonstrated by *Gibson v. Prudential Ins. Co.* (1956), 274 Wis. 277, 80 N. W. (2d) 233, and the *Frozena Case, supra.* In the *Gibson Case,* at page 287, the court made this amply clear in stating the following:

"In the case at bar we are obliged to conclude that the statements of the medical examiner that the applicant's condition of hydrocele 'should not affect insurable risk' and that 'in his opinion the risk was not questionable because of any factor, such as the presence or history of . . . physical defect, etc.,' amounted to a declaration that the applicant was a fit subject for insurance. We are unable to perceive substantial distinction in the purpose and effect of the question here compared to one which may have inquired: 'In your opinion is the applicant a fit subject for insurance because of the presence or history of a physical defect, etc.?' "

This same point was brought out in the *Frozena Case,* as discussed in *Jespersen v. Metropolitan Life Ins. Co.* (1947), 251 Wis. 1, 4, 27 N. W. (2d) 775, where the court said:

"In the *Frozena Case, supra,* the medical examiner was asked to characterize the risk as 'first class, average, doubtful or poor' and he characterized it as 'first class.' This amounted to a declaration that the applicant was a fit subject for insurance and brought sec. 209.07 into operation."

Based on the foregoing, it becomes clear that no special verbiage is required to constitute the certificate or declaration contemplated in sec. 209.07, Stats., and we must determine whether the medical report, consisting of the two pages of Exhibit 3, is such a certificate or declaration under the statute. The trial court made the following determination

with reference to question 20 appearing· in the medical examiner's report:

"This question was phrased so that the insurance company, when reading the medical examiner's answer, would know the medical examiner, in effect, declared the applicant a fit subject for insurance."

The appellant, on the other hand, relies upon the *Jespersen Case, supra.* In that case, at page 4, the court observed that ". . . sec. 209.07 does not apply where a medical examiner merely enters his findings with respect to the physical examination and forwards them to the company without comment." The court went on to note the following (p. 4):

"The medical examiner simply certified height, weight, measurements, pulse, and blood pressure and that he had found no evidence of impairment of the heart, brain, stomach, lungs, etc. These answers were all in response to specific questions required to be answered by the medical examiner and there is nowhere in the record, so far as we can discover, a certification of health or declaration that the applicant is a fit subject for insurance."

Our examination of the second page of Exhibit 3, considered in its entirety, persuades us that the trial court was correct in deciding that the report constituted a "declaration of fitness for insurance." The medical report consists of two pages. On the first page, the physician records the applicant's answers to numerous questions, most of which relate to the applicant's medical history. On the second page of the report, however, the doctor is asked questions which are significantly different from those on the first page.

Unlike the first page, the second page of the report is not to be signed by the applicant. While a few of the questions contained on the second page call merely for the recitation of measurements, the answers to other questions thereon must necessarily involve the doctor's professional appraisal. For example, in question 14, the doctor is asked to evaluate the

applicant's "general appearance" and "apparent age." Question 16 reads as follows:

"Do you find evidence of past or present disease or abnormality of the following?
"(a) Eyes, Ears, Nose, Throat. Measure markedly impaired vision, corrected and uncorrected. State if hearing aid used.
"(b) Skin: Thyroid or other Endocrine Glands.
"(c) Lungs or Pleurae.
"(d) Abdominal Organs (including Hernia).
"(e) Musculoskeletal System. (Any deformity?)
"(f) Vascular System. (Any Varicose Veins?)
"(g) Nervous System. (Any tremor or abnormal reflexes?)"

Question 20 reads as follows:

"In your opinion is there anything detrimental in the habits, surroundings or occupation of the proposed insured?"

The responses to the foregoing questions appearing on page 2 of the medical report reflect the doctor's evaluation as to the applicant's health. For the purposes of sec. 209.07, Stats., the medical examiner, in effect, gave an opinion as to the applicant's fitness for insurance.

The foregoing conclusion is directed by the statement of this court in *Ludwig v. John Hancock Mut. Life Ins. Co.* (1956), 271 Wis. 549, 74 N. W. (2d) 201. In that case, two of the questions which were asked of the examining physician were as follows:

"In your opinion, is there anything detrimental to the risk in the habits, occupation or surroundings of the proposed insured?"

"Do you have any other information which might affect the company's decision?"

It is apparent that the first question recited above from the *Ludwig Case* is substantially the same as question 20 in the case at bar; the court in that case said, at page 554:

"The record indicates that the insured was examined by a medical examiner of the defendant on July 24, 1953, and that the examiner in effect declared the applicant a fit subject for insurance."

The appellant seeks to avoid the impact of the *Ludwig Case* on the ground that the portion quoted immediately above was only *obiter dicta*. The applicability of sec. 209.07, Stats., in relation to the questions contained on the medical report was raised in the respondent's brief in the *Ludwig Case* and was pertinent to the court's decision. In our opinion, the trial court was correct in regarding the *Ludwig Case* as controlling in the case at bar.

### *Was There Deceit as a Matter of Law?*

The jury found that Wallace Platke's false representation was not made with an intent to deceive. We believe that the record discloses two grounds upon which to support this finding.

There is an ambiguity contained in the applicant's responses to questions 9 (a) and 9 (b). In response to question 9 (a), the applicant stated that he had not consulted a physician during the previous five years; but in question 9 (b), he stated that he *had* been treated in a hospital during the past five years. Even if the disclosure in 9 (b) is deemed to be erroneous, the jury was entitled to interpret this disclosure in the applicant's favor. When the issue was whether there was an intent to deceive, the jury may have considered whether a man would disclose a recent hospitalization at the same time that he allegedly was attempting to conceal his recent medical treatment.

A second basis upon which the jury could have determined that there was an absence of an intent to deceive the medical examiner results from the testimony of Dr. Halser that Wallace Platke "did not appear to be very bright." Dr.

Halser further testified that Wallace Platke "didn't have insight into what was wanted of him" or needed by him in the way of treatment. The jury may have interpreted Dr. Halser's characterization of the applicant as justifying a conclusion that he was not likely to have entertained the deceitful intentions which the appellant ascribes to him.

*By the Court.*—Judgment affirmed.

CURRIE, C. J. (*dissenting*). I respectfully dissent from the holding of the majority that the instant medical examiner's report constituted a certificate of health or a declaration of fitness within the meaning of sec. 209.07, Stats.

Most medical reports of life insurance companies consist of two parts, the first of which consists of questions which the medical examiner puts to the applicant and is signed by the applicant; the second consists of the questions asked of, and answered by, the medical examiner based on his examination of applicant. Typical of these latter types of questions are the subdivisions of question 16 quoted in the majority opinion. The court's opinion comes perilously close to holding that all of these medical examiner reports in which the physician certifies to the findings made by him of his physical examination of the applicant constitute a certificate of health or declaration of fitness. I cannot conceive how questions asked of the medical examiner, that merely require his statement of his findings made upon examination of applicant, constitute a certificate of health or declaration of fitness within the meaning of sec. 209.07, Stats. The only question in Part II of the instant medical examiner's report which varies from this pattern is question 20 which inquires of the medical examiner as to his opinion regarding "habits, surroundings, or occupation of the proposed insured." The opinion requested does not relate to the general fitness of the applicant so as to constitute a certificate of health. Rather, it is restricted to the habits, surroundings, or occupation of the applicant.

I can perceive of no significant difference between the form in which question 20 is worded and a question which merely asks, "Have you any information with respect to anything detrimental in the habits, surroundings, or occupation of the proposed Insured?"

It seems to me that the test to be applied as to whether a medical examiner's report comes within the provisions of sec. 209.07, Stats., is: Do the statements of the medical examiner in his report go beyond merely stating his objective findings, so as to express an opinion as to general health or fitness for insurance? The mere fact that one statement may express an opinion with respect to one element of the whole, such as does question 20, should be held to be insufficient to constitute an expression of opinion as to the total health or fitness of the applicant for insurance.

The writer is the only present member of the court who participated in the decision of *Ludwig v. John Hancock Mut. Life Ins. Co.* (1956), 271 Wis. 549, 74 N. W. (2d) 201. In concurring in that sentence of the opinion which reads (at p. 554), "The record indicates that the insured was examined by a medical examiner of the defendant on July 24, 1953, and that the examiner in effect declared the applicant a fit subject for insurance," I must confess I was remiss in not going back and again reviewing the briefs when I joined in the opinion. However, an examination of the briefs affords a partial excuse for this failure on my part.

The appellant insurance company's brief stated four questions involved on appeal, none of which referred to sec. 209.07, Stats., or raised any issue with respect thereto. The respondent's brief did make the assertion that the medical report constituted a declaration of fitness and estopped appellant from contesting the policy. Then appellant came back with a reply brief which took the position that secs. 209.06 and 209.07 were entirely beside the point on the issues of coverage raised by appellant based on events which occurred

after the medical examiner's report. Appellant did not challenge respondent's assertion that the medical examiner's report constituted a declaration of fitness.

Thus because of the position taken by the insurance company in the *Ludwig Case* we had no contest of the issue whether the medical examiner's report constituted a declaration of fitness within the meaning of sec. 209.07, Stats. Therefore, I do not consider that the *Ludwig Case* is one that this court should consider controls the result here. Perhaps it is poetic justice that this particular insurance company should now be impaled by the *Ludwig Case* decision, but I feel the precedent we are setting for future cases by the instant decision is a bad one.

I am authorized to state that Mr. Justice HALLOWS joins in this dissenting opinion.