KELLY, Respondent, v. MADISON NATIONAL LIFE INSURANCE COMPANY, INC., Appellant.

*November 2—November 28, 1967.*

154

For the appellant there were briefs and oral argument by *Charles H. Johnson* of Madison.

For the respondent there was a brief by *Richard R. Rynders,* attorney, and *Michael A. Burke* of counsel, both of Madison, and oral argument by *Mr. Rynders.*

HALLOWS, J. On March 23, 1964, Kelly was solicited for insurance by an agent of the defendant and was given an application to take to his family physician for a medical examination. Kelly told the agent he was afraid he might not pass a physical examination as he had an ulcer but was advised to let the medical examiner be the judge. At the time Kelly was a sixty-three-year-old farmer who operated three farms, rented an additional 1,800 acres of pasture land, and maintained a 1,000-head herd of cattle. Although his formal education ended at fifth grade, he was a successful self-educated man and managed most of his affairs himself. Two days later Kelly went to see Dr. Warrick who gave him an insurance medical examination, during which Kelly was asked to answer some 22 questions on the medical-examination blank. The application consisted of several pages—a general application plus a medical-examination blank containing 22 questions to be answered by the applicant and another page entitled "Report of the Examining Physician" containing questions 23 through 79 to be answered by the medical examiner. Kelly's answers with the exception of those to questions five and six were written by the doctor as he gave them. In respect to answers five and six, Dr. Warrick interpreted Kelly's answer and wrote down his interpretation. After completing the medical examination of Kelly, Dr. Warrick completed and signed the report of the examining physi-

cian. In the place for "Remarks" at the end of the report, Dr. Warrick wrote "Applicant appears to be healthy state at present time." Upon this application, the defendant issued its policy.

About a year and a half later on September 16, 1965, Kelly died after developing cardiac and gastro-intestinal complications. The certificate of death stated Kelly's death was caused by probable ventricular fibrillation due to posterior myocardial infarction. The questions in the application claimed to be falsely answered are:

3. Are you now in good health? Yes

4. When were you last attended by a physician or consulted one? 1/26/64

5. For what disease? General check-up

6. Give details in full. Complete medical check-up showed or revealed no gross abnormalities.

9. Has any physician ever given an unfavorable opinion of your health after either a formal or an informal examination? No

20. Have you any defect in hearing or eyesight, any malformation or varicose veins? No

22. Have you ever had an illness, disease, injury or operation other than as stated by you above? If so, give full particulars, date, duration, severity, etc. of each. Use reverse side if necessary. No

50. Is there any evidence of disease of the digestive tract? No

77. Do you find anything unfavorable in the habits, physique, occupation or environment of the applicant? No

The defendant claims these answers are false because Kelly did not enter the hospital on January 26, 1964, for a general checkup but was there four days for gastritis and the diagnosis of his ailments during this hospitalization was: Gastritis, arteriosclerotic vascular disease, and chronic tension state. It is argued these ailments are

gross abnormalities, that Kelly in 1961 was told he had an ulcer, and in January, 1964, Dr. Warrick told Kelly he had gastritis and arteriosclerosis, and that Kelly wore eyeglasses and during his January hospitalization complained of blackouts or blurred vision on five or six occasions. The answer to question 22 is claimed false because both Kelly and Dr. Warrick were aware of the previous diagnosis of the duodenal ulcer, arteriosclerotic vascular disease and gastritis; these constitute an illness or a disease; and Dr. Warrick did nothing to correct Kelly's answers.

In respect to the part of the application called Report of the Examining Physician, the defendant argues Dr. Warrick falsely answered question 39 in that he did not report his findings as to leg arteriosclerosis and stated in the answer to question 50 that there was no evidence of disease of the digestive tract although he was aware of the duodenal ulcer and gastritis. It is also argued the chronic tension state is reflected in the habits of a person and therefore the "no" answer to question 77 was false.

The trial court concluded Dr. Warrick gave a "statement of fitness for insurance" or a "certificate of health" within the meaning of sec. 209.07, Stats.,[1] and being Kelly's personal physician and having had recently examined and treated him, he could not be deceived in making such statement by the answers given by Kelly. There-

[1] "209.07 **Estoppel by report of medical examiner, effect of fraud.** If the medical examiner of any life or disability insurance company shall issue a certificate of health, or declare the applicant a fit subject for insurance, or so report to the company or its agent under the rules and regulations of such company, it shall thereby be estopped from setting up in defense of an action on a policy issued thereon that the insured was not in the condition of health required by the policy at the time of the issue or delivery thereof, unless the same was procured by or through the fraud or deceit of the insured. This section shall apply to fraternal benefit societies."

fore, the court decided the only issue which could be submitted to the jury was whether Kelly and the doctor colluded to obtain the life insurance policy as alleged in the defendant's answer. We consider the trial court was correct in this respect and that the defense based upon sec. 209.06, dealing with the effect of misrepresentations and false statements in an insurance application, was not available to the defendant. Sec. 209.07 estops a life or disability insurance company from setting up a defense otherwise available under sec. 209.06 in those cases where its medical examiner issues a certificate of health or declares the applicant a fit subject for insurance unless such certificate or the statement is procured by or through the fraud or deceit of the insured. Under this section the collusion between Kelly and the doctor to mislead the insurance company in issuing the policy and the making of the certificate or statement by the medical examiner as a part of such collusion would satisfy the requirement of the section that the statement or certificate be "procured by or through the fraud or deceit of the insured."

The issues then are whether Dr. Warrick issued a certificate of health or made a declaration that Kelly was a fit subject for insurance within the meaning of sec. 209.07, Stats., and if so, whether the doctor and Kelly colluded to obtain the policy of insurance.

It is argued by the defendant the statement "Applicant appears to be healthy state at present time" in the report of the examining physician under the heading "Remarks" is not an opinion of the doctor but a report of a finding— an observable fact from the appearance of Kelly. This is not a reasonable interpretation. Question 24 in the report asked, "Does his appearance indicate good health?" which was answered "Yes." There was no need to repeat this answer. The report of the examining

physician sought remarks of the examiner and while it did not expressly request an opinion, it could reasonably be understood to have done so. Both Dr. Warrick and the underwriter for the defendant seem to have so understood it and testified they considered the answer to mean that in the opinion of the doctor, the applicant was in good health at that time.

The meaning of a word must be found in the context and in the setting of its use. A word used in anger often carries a different meaning than when used in jest. Likewise, a word used by a medical examiner may have an entirely different meaning in its setting than when used by a layman. *Unruh v. Industrial Comm.* (1959), 8 Wis. 2d 394, 99 N. W. 2d 182. The word "appears" in the remarks of Dr. Warrick is not descriptive of Kelly's physical appearance but is an expression of what he as the medical examiner thought Kelly's health was as a result of the questions asked in the forepart of the application and as a result of his medical examination. This was a medical opinion as much as if he had used the words "in my opinion." It is immaterial whether the statement covered only the present health condition of Kelly and was not the sole basis for underwriting the risk. Sec. 209.07, Stats., does not require the certificate or opinion to be the sole basis for issuing the policy.

This interpretation of the medical report is in keeping with our past decisions construing sec. 209.07, Stats. We have made the general distinction between the examining physician's statements reflecting his objective findings of the medical examination and statements which are evaluations based on those findings. If such evaluations are broad enough in scope and content to constitute a certificate of health or a declaration of fitness for insurance, they are governed by sec. 209.07. In *Frozena v. Metropolitan Life Ins. Co.* (1933), 211 Wis.

373, 247 N. W. 333, the medical examiner was asked to characterize the risk as first class, average, doubtful, or poor, and he characterized it as first class. The court held this statement in a context of the facts of that case amounted to a declaration that the applicant was a fit subject for insurance and thus brought sec. 209.07 into operation. In *Jesperson v. Metropolitan Life Ins. Co.* (1947), 251 Wis. 1, 27 N. W. 2d 775, the facts of *Frozena* were distinguished and it was held that where the medical examiner only reported objective medical data from his examination such as pulse, blood pressure, no evidence of impairment of heart, brain, stomach, lungs, etc., that such answers did not constitute a declaration that the applicant was a fit subject for insurance. In *Ludwig v. John Hancock Mut. Life Ins. Co.* (1956), 271 Wis. 549, 74 N. W. 2d 201, the court without discussion of the point stated the record indicated the examiner in effect declared the applicant a fit subject for insurance but the issue of what precisely amounted to the declaration does not appear in the opinion nor was the question squarely presented.

In *Gibson v. Prudential Ins. Co.* (1956), 274 Wis. 277, 80 N. W. 2d 233, we thought a medical examiner's evaluation of the applicant's condition of hydrocele should not affect his insurability and his statement, "in his opinion the risk was not questionable because of any factor . . ." constituted a certificate of fitness for insurance. This case and *Ludwig* were relied on in *Platke v. John Hancock Mut. Life Ins. Co.* (1965), 27 Wis. 2d 1, 133 N. W. 2d 277, wherein this court perhaps went to the outer limits of what constituted a physician's statement of fitness for insurance. The soundness of *Platke* was questioned in the dissenting opinion but we need not now determine its soundness because in the instant facts the statement of the doctor expressly refers not to one or

two elements or factors of health but to the entire condition or state of health of the applicant. Either Dr. Warrick's declaration is an opinion of general fitness for insurance or of health or it means nothing.

The next question is whether there is sufficient evidence to sustain the jury's verdict that there was no collusion between Kelly and Dr. Warrick to secure the issuance of the life insurance policy. It would serve no good purpose to examine the evidence in detail. The plaintiff argues the questions required interpretation and Kelly gave honest answers as he interpreted the questions. On the other hand the defendant argues the questions were clear and Kelly and the doctor gave false answers. Even if some of the answers are considered to be less than candid and fringed with falsity, there is insufficient evidence of any agreement between Kelly and the doctor to secure the policy of insurance. True, such an understanding may be merely tacit and the proof thereof generally rests upon circumstantial evidence as argued by the defendant. *Drexler v. Zohlen* (1934), 216 Wis. 483, 257 N. W. 675. See also *Monahan v. Mutual Life Ins. Co.* (1927), 192 Wis. 102, 212 N. W. 269. However, we think the answers of Kelly and the doctor could be false without necessarily giving rise to a joint intention or collusion to defraud the insurance company.

The defendant suggested Kelly's personal physician for the examination and it is bound by his mistakes or actions as a medical examiner short of fraud or collusion; absent that, his actions cannot be imputed to Kelly. We think a jury question was presented and there is sufficient evidence to sustain its verdict although another jury might have easily come to a different conclusion. Consequently, the trial court did not err in refusing to grant the defendant's motion for a directed verdict or its motion for judgment notwithstanding the verdict nor is the defendant entitled to a new trial under sec. 270.49, Stats., on the ground the verdict is contrary to the evidence.

The plaintiff requests double costs under sec. 251.23 (3), Stats., because the defendant has delayed the payment of the proceeds by this appeal. We think the defendant had an arguably meritorious defense which it was entitled to litigate and appeal without penalty of double costs. The trial court permitted the insurance company to defer making its opening statement until after she as the plaintiff had put in her evidence and the plaintiff claims such practice permits the defendant to gain an unfair advantage and makes for theatrics and surprise to the damage of the plaintiff. We understand that the practice in this respect in the trial courts of this state is not uniform. In civil cases, some trial judges allow the defendant to defer making an opening statement, other judges require the defendant to make his opening statement immediately following the plaintiff's opening statement or the making of the statement is waived. Since the plaintiff was not prejudiced by the deferring of the defendant's opening statement, the question need not be decided and we reserve its solution for a more appropriate time.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.