POWALKA, Appellant, v. STATE MUTUAL LIFE ASSURANCE COMPANY OF AMERICA, Respondent.*

*No. 78. Argued December 2, 1968.—Decided December 20, 1968.*
(Also reported in 163 N. W. 2d 162.)

* For disposition of motion on rehearing, see post, p. 158a.

152

For the appellant there was a brief by *Schober &
Radtke* of New Berlin, attorneys, and *Maroney & Schiro*
of Milwaukee of counsel, and oral argument by *Thomas
P. Maroney.*

For the respondent there was a brief by *Foley, Sam-
mond & Lardner,* and oral argument by *Gilbert W.
Church,* all of Milwaukee.

ROBERT W. HANSEN, J. If the medical examiner did not make a statement of fitness for insurance, statements by the insured which were false and increased the risk destroy the right of the widow to recover on the policy.[1]

If, however, the medical examiner made a statement of fitness for insurance, or issued a certification as to the health of the insured, then the insurance company can defeat recovery on the policy only if it can establish actual fraud or deceit on the part of the insured.[2]

If sec. 209.06, Stats., applies in this case, material misrepresentations defeat recovery. If sec. 209.07 applies, fraud must be established to block recovery. Which yardstick is to be used depends entirely upon whether or not the insurance company received a certification of health or fitness for insurance from its medical examiner.

The question of whether the report of a medical examiner in this case constituted as a matter of law a "certificate of health" or a declaring "the applicant a fit subject

---

[1] Sec. 209.06, Stats. "Insurance; application; effect. (1) No oral or written statement, representation or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, unless such statement, representation or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss.

"(2) No breach of a warranty in a policy shall defeat or avoid such policy unless the breach of such warranty increased the risk at the time of the loss, or contributed to the loss, or existed at the time of the loss."

[2] Sec. 209.07, Stats. "Estoppel by report of medical examiner, effect of fraud. If the medical examiner of any life or disability insurance company shall issue a certificate of health, or declare the applicant a fit subject for insurance, or so report to the company or its agent under the rules and regulations of such company, it shall thereby be estopped from setting up in defense of an action on a policy issued thereon that the insured was not in the condition of health required by the policy at the time of the issue or delivery thereof, unless the same was procured by or through the fraud or deceit of the insured. This section shall apply to fraternal benefit societies."

for insurance" has been before this court on more than a few occasions. It is not necessary to analyze these cases because that was done in the recent case of *Kelly v. Madison National Life Ins. Co.*[3]

Of course, not every report of a medical examiner to an insurance company is to be considered a certification of general health or specific insurability. There is a distinction between an examining physician's statement which reflects his findings on the medical examination and the statement which constitutes an evaluation based on such findings.[4] Sec. 209.07, Stats., applies only where the evaluations are broad enough in scope and content to constitute a certificate of health or a declaration of fitness for insurance.[5]

It is clear from the *Kelly Case* that there must be a something extra that moves an ordinary or usual examiner's report into a certification of health or insurability. In the *Kelly Case,* this something more was found in the fact that the medical examiner not only answered the questions asked of him on the company's form but made the following statement in the place for "Remarks" at the end of the report: "Applicant appears to be healthy state at present time."

In the case before us, we deal not with a single medical examination, but with two. In the first examination, the company's examining physician reported to the company

[3] (1967), 37 Wis. 2d 152, 154 N. W. 2d 334, citing and summarizing holdings in *Platke v. John Hancock Mut. Life Ins. Co.* (1965), 27 Wis. 2d 1, 133 N. W. 2d 277; *Gibson v. Prudential Ins. Co.* (1956), 274 Wis. 277, 80 N. W. 2d 233; *Ludwig v. John Hancock Mut. Life Ins. Co.* (1956), 271 Wis. 549, 74 N. W. 2d 201; *Jespersen v. Metropolitan Life Ins. Co.* (1947), 251 Wis. 1, 27 N. W. 2d 775; *Drexler v. Zohlen* (1934), 216 Wis. 483, 257 N. W. 675; *Frozena v. Metropolitan Life Ins. Co.* (1933), 211 Wis. 373, 247 N. W. 333; *Monahan v. Mutual Life Ins. Co.* (1927), 192 Wis. 102, 212 N. W. 269.

[4] *Kelly, supra,* footnote 3, at page 169.

[5] *Ibid.*

that the applicant had an intermittent pulse, an objective finding that he may have had an abnormal heart condition. That this finding was so regarded by the company is established by its home office requesting its examiner either to qualify his finding of irregularity of pulse or to fill out its heart chart. As to the reason for a second examination in this case, the company's medical examiner was asked: "In other words, actually what happened is that the State Mutual, because of your answer on Exhibit 3 to Question 29 (b) was alerted to the fact that he might have a heart condition and they wanted you to make an examination to eliminate that?" The company examiner answered: "That's right. They wanted to clarify the answer given on the original form."

Based on the second examination, the company's doctor reported that the applicant had cardiac hypertrophy, an increased heart size over what would be normal. The heart chart by its form and the second examination by its nature were alike directed to inquiring into whether or not the applicant had a heart condition. It is against this backdrop of a second examination and the purpose of it, that the doctor's statement that there was no "doubt of health or vigor in the applicant's appearance" must be evaluated. (The statement was made at the first examination and was not qualified or changed at the second one.)

In *Kelly*, the examiner said, "Applicant appears to be healthy state at present time." In this case, the examiner answered "No" to the question: "Is there any doubt of health or vigor in the applicant's appearance?" The trial court found this negative answer to be "not the same" as the remark in the *Kelly Case*, finding it to be "nothing more than a physical observation of the applicant." We disagree. There was no need for a second physical examination if all that the company wanted was a description of Powalka's physical measurements. These would not, in fact could not, change much in the brief

time interval between the two examinations. Height, age, weight, etc., were reported fully in the first report. The only reason for the company's insisting upon a qualifying of the answer as to pulse or filling out the heart chart was to secure its examiner's opinion as to whether or not it should issue the policy. When the examining physician did not alter his earlier statement as to health and vigor, despite his adding the fact of an enlarged heart to his earlier report of an intermittent pulse, he was informing the company that in his opinion the applicant was insurable and acceptable. The second examination and second report are more persuasive that a certification of health and fitness was requested and received than the remark added to his report by the examining physician in the *Kelly Case*. We find this case to be well within the outer boundaries of this court's ruling in the *Kelly Case*.

It follows that, given a certificate of health or declaration of fitness for insurance, the company in this case can defeat recovery on the life insurance policy it issued only if it can establish the fraud or deceit required by sec. 209.07, Stats.

However, the defendant-respondent asserts that "Assuming, for purposes of argument only, that the trial court should have applied sec. 209.07 rather than sec. 209.06, the trial court's decision still must be upheld." This argues that fraud and deceit, the grounds for avoidance under sec. 209.07, Stats., were present in this case, and that the judge "would have so found if he had felt obliged to consider the issue." Actually, the trial court, in its memorandum decision, stated:

". . . we do not find any intent to deceive defendant's insurance company but we do find that the misrepresentations referred to increased the risk and contributed to the loss."

This comes close to a conclusive finding negativing an essential element of a defense based upon fraud or deceit.

However, trying this case by the measuring stick of sec. 209.06, Stats., rather than sec. 209.07, the trial court was not required to reach the issue of fraud or deceit. It seems clear that it did not intend to do so. The answer and counterclaim of the defendant insurance company alleged that "The policy was procured by and through said misrepresentations and the fraud or deceit of the insured . . ." This is a sec. 209.07 defense. While the trial court granted judgment on the counterclaim, it did so on its ruling that sec. 209.06, not sec. 209.07, governed. Having here found that sec. 209.07 applies, we feel that this case must be remanded for a new trial, giving the insurance company the opportunity and the responsibility to establish actual fraud or deceit required by sec. 209.07, as the only basis on which recovery on this policy can be defeated.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

The following memorandum was filed March 4, 1969.

PER CURIAM (*on motion for rehearing*). The last sentence in the opinion is changed to read: Having here found that sec. 209.07 applies, we feel that this case must be remanded for further proceedings in the trial court, at its option, either to make findings on the record already made, or in a new trial. In these proceedings the insurance company must establish actual fraud or deceit required by sec. 209.07, as the only basis on which recovery on this policy can be defeated.

The mandate is changed to read: *"By the Court.*— Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion."