**ADAMS POTATO CHIPS, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 19769.

United States Court of Appeals,
Sixth Circuit.

Aug. 17, 1970.

Donald F. Strutz, Fort Wayne, Ind., for petitioner.

Michael F. Messitte, N. L. R. B., Washington, D. C., for respondent, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, William Wachter, Atty., N. L. R. B., Washington, D. C., on brief.

Before WEICK and CELEBREZZE, Circuit Judges, and McALLISTER, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

This cause is before the Court on the petition of Adams Potato Chips, Inc. ["the Company"] to review, and upon the cross-application of the National Labor Relations Board to enforce a Labor Board order requiring the Company to cease and desist from refusing to sign a contract, all substantive terms of which allegedly having been agreed upon, and to cease and desist from refusing to recognize and bargain in good faith with Teamsters and Chauffeurs, Local Union No. 580 ["the Union"]. Relying entirely upon the findings and conclusions of its Trial Examiner, the Board found that by refusing to sign said contract, the Company was in violation of Section 8(a) (5) and (1) of the Labor-Management Relations Act, 1947, as amended, 29 U.S.C. § 158(a) (1) & (5) (1964). The Board's Decision and Order are reported at 176 NLRB No. 16 (1969). This Court's jurisdiction has properly been invoked under Sections 10(e) and (f) of the Act.

The Labor-Management Relations Act enjoins employers to bargain collectively and in good faith with the bargaining agents of their employees about "wages, hours, and other terms and conditions of employment." It is well established, and not in dispute here, that vacation benefits for employees within the bargaining unit are "wages" within the meaning of the statute, and are, therefore, mandatory subjects of bargaining. Young Manufacturing Company, 143 NLRB 189 (1963); Singer Manufacturing Company, 24 NLRB 444 (1940). Once a company and a union have reached agreement upon all mandatory subjects of bargaining raised by either party, upon request of either, the other must sign it. See, e. g., H. J. Heinz Company v. NLRB, 311 U.S. 514, 525–526, 61 S.Ct. 320, 85 L.Ed. 309 (1941). The Board may not compel an employer, however, to sign a contract to which he has not agreed, for such compulsion would be tantamount to the imposition of unacceptable terms upon him. Just as the Act does not compel agreement, it does not authorize the Board to impose its views of a desirable settlement in such a manner. H. K. Porter Company, Inc. v. NLRB, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (U.S. March 2, 1970).

In the instant case, the union ratified and accepted a contract which included a particular vacation benefit clause. The Company had accepted all terms of the contract with the possible exception of the vacation benefit clause. The sole issue on this appeal is whether there is substantial evidence on the record as a whole to support the Board's

finding that the Company had agreed to the vacation clause proffered by the Union. If there is, the Company violated Section 8(a) (1) and (5) of the Act by refusing to sign the agreement. If there is not, the Board erred in compelling the Company to sign.[1]

The findings, conclusions, and recommended order of the Board's Trial Examiner were subsequently adopted by the Board *in toto*. The Trial Examiner found that the Union was certified on September 20, 1967 as the exclusive bargaining representative for "[a]ll driver-salesmen employed by the Employer at its Lansing, Michigan, place of business," and that the unit so described was appropriate. Based on undisputed evidence, he found that the parties, prior to the commencement of substantive negotiations, entered into a ratification agreement whereunder they agreed that any contract reached by the negotiators would be subject to ratification by the Company's president, and by vote of the employees in the bargaining unit. The ratification agreement was, apparently, not reduced to writing.[2] The parties then proceeded into substantive negotiations. The Union was represented in these negotiations by Lloyd C. McKim. The Company's negotiators were Donald F. Strutz and Eugene Cawvey.

At the final meeting between the parties, held on August 27, 1968, McKim introduced an offer previously made by Strutz and Cawvey, but twice rejected by a majority of men in the unit. McKim indicated that a majority of the men in the unit would be willing to ratify the proposed contract if a change were made in the vacation benefit clause which provided that men with 15-years' service would be entitled to a three-week vacation yearly. McKim offered to introduce the contract for ratification before the six unit members present at the meeting if Strutz and Cawvey could agree to change this term so as to give a three-week vacation to men with 10 years' service. McKim testified that Strutz told him he was authorized to accept this change without ratification of the Company president. According to McKim:

> "I said what about the three weeks vacation after ten years, and Mr. Strutz said well, we wondered why you didn't ask it because it is our company policy and I said the reason we didn't ask it, we didn't know it was company policy and so I said would you give us that concession and he said yes, I think we can give you that without any question, because it is company policy and all of the rest of the employees get it, and I said will you have to check that with Mr. Seyfert [the Company president] and he said no this is company policy and we can go along with that."

McKim's testimony is supported by that of one other witness.

Both Cawvey and Strutz testified that neither had authority to modify the proposed vacation package without the approval of the Company president, and, further, that Company policy had not

---

1. We reject the Company's implications that the Union's ratification of the contract was in some way defective. First, because the Company has no standing to challenge the validity of a union's ratification election. *See* Houchens Market of Elizabethtown, Inc. v. NLRB, 375 F.2d 208 (6th Cir. 1967) ; National Labor Relations Board v. Big Run Coal & Clay Co., 385 F.2d 788 (6th Cir. 1967). Second, because the ratification was in no way defective. Six of the eight-man unit voted in the election. All members were invited to the election. Four members present voted to ratify the contract. The absent members may be presumed to have been willing to accept the majority's wishes. *See e. g.*, National Labor Relations Board v. Deutsch Co., 265 F.2d 473, 478–479 (9th Cir. 1959), cert. denied, 361 U.S. 963, 80 S.Ct. 592, 4 L.Ed.2d 544.

2. Neither party suggests that such a ratification agreement is of itself illegal, or that it is not binding upon both parties. See National Labor Relations Board v. Darlington Veneer Company, 236 F.2d 85 (4th Cir. 1956) ; Allis-Chalmers Mfg. Co. v. NLRB, 213 F.2d 374 (7th Cir. 1954).

been to give employees three-weeks' vacations after 10 years.

In any event, from substantially undisputed testimony, the Trial Examiner found that Cawvey and Strutz were then asked to leave the room in which the negotiations were being conducted in order that the unit members present have an opportunity to vote on the proposed contract. McKim then took a poll of the six unit members present, four of whom voted to accept the contract subject to the "10-year–three-week vacation proposal. Strutz and Cawvey were then recalled to the meeting room and informed by McKim that: "You have got a contract." Strutz did not see it that way. He indicated, according to his own testimony, that in view of the fact that the unit was in the midst of decertification proceedings, which were instituted in July, 1968, and that in view of the fact that only four of the eight unit members had voted in favor of the contract, he would not submit it to the Company president for approval. As a result, the Union filed the instant charges.

The Trial Examiner credited the testimony of McKim that Strutz had indicated that the president's ratification was not required for the vacation benefit change, and that it was acceptable to Strutz, and therefore found that Strutz' subsequent refusal to submit the contract to the president for his signature was violative of section 8(a) (5). This finding, if supported by substantial evidence on the record as a whole, is binding on this Court.

■ As preliminary matters, neither of Strutz' stated reasons for not conveying the proposal to the Company president was proper. The Company cannot defend its refusal to sign on its own allegations of irregularities in the Union's ratification. N. 1, *supra,* at p. 3. Nor is an employer relieved of his obligation to bargain during the certification year, absent unusual circumstances which are not present here. Brooks v. NLRB, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954). The Company's sole defense to

the instant charge, therefore, can only be that no agreement was reached between the negotiators, and Strutz, therefore, was under no obligation, under the terms of the ratification agreement, to submit the contract to the Company president.

The Trial Examiner credited McKim's testimony that agreement had been reached with Strutz over Strutz' opposed testimony that it had not. His finding was supported by the following reasons:

I do find, however, that complete and final agreement was reached between the parties on August 27. This finding is based upon the following extrinsic facts as distinguished from the testimony:

1. The change in the vacation clause requested by McKim was a minor one and conformed to the current policy of the Respondent with respect to inside employees. I see no reason why such a change would have to be referred to Seyfert and I accept McKim's testimony that Strutz said the change imposed no difficulty.

2. Strutz never stated that the vacation clause was the reason for rejecting the agreement. Strutz stated that Respondent doubted Local 580's continuing majority status and was therefore rejecting the contract.

3. The conduct of McKim at the meeting of August 27 indicated that he would accept the contract proposed by the Respondent if he could have it ratified by the membership. All changes which were proposed by McKim and refused by Respondent were discarded by McKim and it is evident that he was willing to accept the agreement proposed by Respondent.

I therefore find that by refusing to sign the contract agreed upon by the parties, including the change in the vacation clause from 15 to 10 years of service for eligibility for a 3-week vacation, Respondent violated Section 8 (a) (5) of the Act.

■ Were we the original finders of fact, our resolution of the diametrical-

ly opposed testimony in this case may well have been influenced by factors other than those enumerated by the Trial Examiner and adopted by the Board. We are charged by statute and case law, however, to uphold factual findings of the Board which are supported by substantial evidence on the record viewed as a whole. Universal Camera Corporation v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The credibility of witnesses is within the "special province" of the Board, which not only has experience and expertise in labor disputes, but also has the benefit of the Trial Examiner's observations as to demeanor evidence. See, e. g., Keener Rubber, Inc. v. NLRB, 326 F.2d 968 (6th Cir. 1964), cert. denied, 377 U.S. 934, 84 S.Ct. 1337, 12 L.Ed.2d 297.

▆▆▆ The Trial Examiner's observations are supported not only by his perceptions of demeanor, but also by his evaluation made on the basis of his expertise, that McKim's testimony was more likely true, under the circumstances of this case, than not. This finding is supported by testimony that appears in the record. We cannot say that it is insubstantial when viewed on the record as a whole.

For these reasons, the order of the Board is enforced.

McALLISTER, Senior Circuit Judge (concurring).

It is my view that even though it be considered that Strutz, as the Company's agent, was not authorized to state that the matter of vacation pay, as proposed by the Union, was "company policy" and was acceptable to the Company, it was the duty of the Company's President, Charles Seyfert, for whom Strutz was acting, to repudiate any unauthorized statement of Strutz which did not meet with his approval, and that his failure to do so, either subsequent to the negotiations or as soon thereafter as he had heard of it, or at any time during the protracted proceedings and hearing, where he did not even appear as a witness, resulted in a ratification of the statement of Strutz that the matter of vacation pay proposed by the Union was acceptable to the Company.

WEICK, Circuit Judge (concurring in part and dissenting in part).

In my opinion there is substantial evidence of violations of § 8(a) (5) and (1) of the Act by refusal to bargain in good faith.

Strutz's insistence on a certain method of ratification of the agreement by the union members is a clear violation of the Act. It is equally clear that the company could not refuse to bargain on the ground of any doubt as to the majority status of the union within one year of certification. In my judgment, the refusal of Strutz to submit a contract proposal to the president of the company supported a charge of bad faith bargaining.

The law, however, is clear that the Board has no authority to order an employer to execute a contract which contains terms to which he has not assented. Section 8(d) of the Act specifically so provides. H. K. Porter Co., Inc. v. NLRB, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970).

I depart from the majority opinion in its holding that substantial evidence on the record as a whole supports the Board's finding that agreement was reached on the vacation term and, therefore, the Board is entitled to enforcement of its full order, including that part which requires the company to execute the contract.

The trial examiner found:

"Based on uncontradicted testimony I find that the parties agreed that any contract reached by the negotiators, Donald F. Strutz and Eugene Cawvey for Respondent and Lloyd C. McKim for Local 580, would be subject to ratification by Charles Seyfert, Respondent's president, and by vote of the employees in the bargaining unit." (Footnote omitted) (App. at 48)

This finding was adopted by the Board (App. at 46), and the majority has noted both the validity of such an agreement and the binding nature thereof. See footnote 2, *supra*. Starting from this premise of the scope of the agents' authority to bargain for the company in this case, I am unable to find a scintilla of evidence to support the finding that the company president ratified the agreement which included the vacation proposal.

Granting that the trial examiner found that Strutz represented to the union negotiators that it would not be necessary to get the president's approval of the proposed change, it does not follow that an agreement was reached. Strutz's agency was limited, and he had no authority to bind his principal to a contract. He could not enlarge on the scope of his agency by his own declarations and acts, and the union, which had actual knowledge of the limitations on Strutz's authority, could hardly rely on any such declarations. Agency cannot be established by the acts and declarations of the alleged agent. Atchison, Topeka & Santa Fe Ry. Co. v. Bouziden, 307 F.2d 230 (10th Cir. 1962). Particularly is this true where the authority of the agent has been clearly delineated by agreement of the parties.

Assuming that the vacation proposal is company policy for inside employees, there having been presented no other evidence to show ratification by the president, the policy with respect to inside employees is not sufficiently probative to be "substantial" evidence where the inside employees are members of a different bargaining unit.

There is not an iota of evidence that the company president ever saw the proposal, let alone ratified it. While this may be an element of bad faith bargaining, it nevertheless will not support the conclusion that there has been agreement. See San Antonio Machine & Supply Corp. v. NLRB, 363 F.2d 633, 636 (5th Cir. 1966).

In our opinion, *H. K. Porter, supra,* is controlling. In *H. K. Porter* the Supreme Court held that the Circuit Court could not grant enforcement of a Board order requiring the company to execute a contract which contained a provision to which it had not agreed apparently for the sole purpose of frustrating the union. The Court reasoned that the provision involved a mandatory subject of bargaining, and, regardless of the company's conduct, it could not be required to agree to the provision.

It appears that in the present case the Board has attempted to circumvent the restrictions of section 8(d). There is not a shred of evidence that the company president agreed to the proposal. By characterizing a vacation change as minor, the Board attempted to expand the authority of the company's bargaining agent to include approval of this change. This is not a case of a minor change in an agreement. It involved a mandatory subject of bargaining. Under *H. K. Porter,* it is clear that the Board could not compel the company president to agree to the vacation change in spite of the fact that there was no company policy against it, and the fact that it would cause the company no great inconvenience.

Since it cannot compel the principal directly, it cannot do so indirectly by gratuitously expanding the agent's authority contrary to the agreement of the parties.

The remarks of the Court in *H. K. Porter* are particularly apt:

"It may well be true, as the Court of Appeals felt, that the present remedial powers of the Board are insufficiently broad to cope with important labor problems. But it is the job of Congress, not the Board or the courts, to decide when and if it is necessary to allow governmental review of proposals for collective-bargaining agreements and compulsory submission to one side's demands. The present Act does not envision such a process." 397 U.S. at 109, 90 S.Ct. at 826.

The burden of proof was upon General Counsel for the Board to establish by a preponderance of the evidence that the president ratified the proposed agreement negotiated by the company's negotiator. He offered no proof tending to show such approval.

The fact that the president of the company was not called as a witness to testify did not operate to overcome the deficiency in the Board's evidence. In my judgment, there was no duty on the part of a litigant to offer proof where his adversary has failed to make out a case.

The appropriate remedy in this case is only to order the company to bargain in good faith with the union.