INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT
& AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,
LOCAL 180, C. I. O., Respondent, vs. J. I. CASE COM-
PANY, Appellant.

*January 15—February 25, 1947.*

64

For the appellant there were briefs by *Robertson & Johnson,* attorneys, and *Clark M. Robertson, Louis Quarles,* and *Maxwell H. Herriott* of counsel, all of Milwaukee, and oral argument by *Mr. Herriott* and *Mr. Robertson.*

*Max Raskin,* attorney, and *William F. Quick* of counsel, both of Milwaukee, for the respondent.

BARLOW, J. The first question to be determined is whether respondent's motion to dismiss the appeal, for the reason that the questions involved are moot, should be granted. In support of its motion, respondent filed an affidavit setting forth that on December 30, 1946, appellant inserted an advertisement in the Racine Journal-Times, a newspaper of general circulation in and about the city of Racine, Wisconsin, stating, among other things, that the company "will not give effect to the agreement of February 6, 1937, so as to preclude or limit collective bargaining with Local 180 on any proposal which is or may be in conflict therewith," and attached a copy of the advertisement to the affidavit. The instrument referred to is the subject matter of the litigation on this appeal. The affidavit also set forth that a letter of similar import was sent by appellant to each of its employees now out on strike and to this respondent. In the advertisement the company does not admit that the agreement is void, but merely states it will not be used in any way to preclude or limit collective bargaining with the union. On this appeal the position of the company is that the agreement is a legal, binding contract, and is in full force and effect as between the company and the union, and the mere statement that the contract "will not be used to preclude or limit collective bargaining" does not make the validity of the contract a moot question. Motion to dismiss appeal is denied.

The questions presented for decision are whether an instrument dated February 6, 1937, is a legal and binding contract between the International Union, United Automobile, Aircraft & Agricultural Implement Workers of America, Local 180, C. I. O., which for convenience will hereinafter be referred to as the "union" and appellant J. I. Case Company, a corporation, which will hereinafter be referred to as the "company," or whether it was terminated by a later agreement, or is void as being against public policy.

For a number of years the company has been engaged in the manufacture of farm implements, having a plant at Racine, Wisconsin, and two plants in the state of Illinois. During the latter part of 1935, and thereafter during 1936, the company bargained collectively with representatives of the Independent Employees' Council, who claimed to have as members a majority of the company's employees. During 1936 some of the employees were members of the Case Local of the Wisconsin Industrial Organization, and others were members of a so-called Federal Union affiliated with the A. F. L. These two groups affiliated and formed respondent union, which claimed as members a majority of the Racine Case shop employees. In October, 1936, a strike was called and demand made that the company recognize the union as the collective-bargaining agent for all Racine Case shop employees. The company refused to negotiate with the union while lawless strike conditions existed. A meeting was finally arranged between the company and the union, which was held January 29, 1937, at which meeting the union demanded that it be recognized as the collective-bargaining agent of all Racine Case shop employees. The company claimed it was under obligation to bargain collectively with the Independent Employees' Council, as to its members. As a result of conferences the company submitted a statement, in writing, of assurances which it demanded in the nature of a charter to govern their future relationships. As a result of continuing conferences the

committee for the union signed an instrument on February 6, 1937, which reads as follows:

"J. I. Case Company and All Case Employees,
Racine, Wisconsin.

"Gentlemen: As long as Local 180 is the only group collective-bargaining agency for hours, wages and working conditions for Racine Case shop employees, we will agree for Local 180 and the U. A. W. A.—

"1—That all grievances or unadjusted complaints will be carried through normal channels of adjustments until they are presented to the president of the company or, in his absence, the next ranking officer, before any strikes, interruptions or similar action.

"2—To full recognition of the unquestioned right of any employee to either join a union or similar association of his own choosing, or to refrain from joining.

"3—That there will be no activities regarding unions, union business or union membership on the Case Company's property, except normal functions in presenting grievances or bargaining.

"4—That there will be no coercion, intimidation or threats used against Case employees regarding union membership.

"5—That we will at all times co-operate with the foremen and the management in the maintenance of harmony and discipline in the shops in accordance with shop rules.

"6—The full recognition of the right of any individual employee not a member of Local 180 to deal individually with the company.

"7—That in the future there will be no interference with the free right of the company to the use of its property or with the free right of any employee of the Case Company to come and go to work unmolested, in consideration of the company refraining from production in case more than fifty per cent of the employees are out on strike.

COMMITTEE FOR LOCAL 180, U. A. W. A."

In the afternoon of February 6, 1937, Mr. Clausen, president of the company, took this instrument to the committee of the Independent Employees' Council and explained it to

them, and the next morning the Independent Employees' Council agreed to relinquish any claim to bargain collectively. Thereafter the company and the bargaining committee of the union formulated a labor contract and the strike was settled. The company never challenged the claim that more than fifty per cent of the employees of the company were members of the union.

In 1942 labor disputes arose in the company's plants in Racine, Wisconsin, Rockford, Illinois, and Rock Island, Illinois. The dispute was heard by a Panel of the National War Labor Board, and the Panel filed a report and recommendation under date of June 13, 1942, and filed a directive order July 22, 1942. In the Rock Island plant defendant had entered into annually renewable written employee contracts with individual employees. The issue as to these individual contracts ultimately reached the supreme court of the United States in *J. I. Case Co. v. National Labor Relations Board,* 321 U. S. 332, 64 Sup. Ct. 576, 88 L. Ed. 762.

There had been no election at the Racine plant, but the company recognized the union as the collective-bargaining agent. At the hearing before the National War Labor Board the union demanded that the new contract should supersede the instrument of February 6, 1937, and the company insisted that the instrument remain in effect, particularly clause 6, wherein the union recognized the right of an individual who is not a member of the union to deal with the company individually. The Panel recommended:

". . . that: (1) no reference be made in section 1 to the right of an individual not a member of the union to deal individually with the company; and (2) no recognition be made of the 1937 policy statement [being the instrument in question here] in article X of the contract."

The Panel report also provided as follows:

". . . By excluding a reference to it [meaning the instrument of February 6, 1937] in article X no reflection is

cast upon its legality. In the interests of stronger industrial relationships within the organization, we believe no reference to this document should be made in the new contract."

Thereafter the company wrote the National War Labor Board that "for the duration of the war, solely in an effort to co-operate with the War Labor Board's interpretation of what is best in the war effort" the company would, on the conditions set forth in said letter, comply with the directive order, also setting forth in the letter the following:

"The company has agreed to forego its constitutional right to obtain individual contracts. The company, of course, cannot waive on behalf of any individual employee nor should it disregard, any constitutional right which the individual employee may have to make his individual contract with the company."

And further stated:

"The company therefore assumes, and its assent is predicated thereon, that the omission of reference in no respect affects the legality of Appendix 'A' [being the instrument in question], and it asserts the validity and continuing effect of the contract referred to as 'Appendix A.'"

Subsequently the company and the union arrived at an agreement and a contract was executed February 18, 1943. The executed contract was delivered to the union by the company with a letter containing the following paragraph:

"The execution and delivery of this document is conditioned upon the company's response dated August 3, 1942, to the Directive Order of the National War Labor Board issued July 22, 1942. A copy of this response is hereto attached."

The letter to the National War Labor Board referred to in the foregoing paragraph is the one in which the company asserted the validity and continuing effect of the instrument which is the subject matter of this litigation.

The National Labor Relations Act became effective July 5, 1935. Sec. 1 declares it to be the policy of the United States

to eliminate causes of obstruction to the free flow of commerce and mitigate and eliminate obstructions "by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-government, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." (29 USCA, sec. 151.)

Sec. 9 (a) of the act is also material to the questions involved and reads as follows:

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer." (29 USCA, sec. 159 (a).)

The controversy largely centers around paragraph 6 of the letter of February 6, 1937, authorizing the company to deal individually with any employee not a member of the union. The company admits that under the National Labor Relations Act it must deal with the exclusive collective-bargaining representative selected by the majority of the employees in the particular unit, which in this instance is the union, unless it is relieved of this obligation. It contends that the union had a right, as the exclusive collective-bargaining representative, to enter into an agreement authorizing the company to deal individually with individuals who were not members of the union, and that by the letter of February 6, 1937, the union so contracted. *National Labor Relations Board v. Jones & Laughlin Co.* 301 U. S. 1, 57 Sup. Ct. 615, 81 L. Ed. 893, and *J. I. Case Co. v. National Labor Relations Board,* 321 U. S. 332, 64 Sup. Ct. 576, 88 L. Ed. 762, are cited to sustain this position.

We cannot resist noting, as the trial court did, that in the letter of February 6, 1937, the union was referred to as a "group" collective-bargaining agency for hours, wages, and working conditions of the employees, and not as the "exclusive" collective-bargaining representative. Appellant attempts to draw a distinction between a sole or exclusive bargaining agency and a sole or exclusive *collective*-bargaining agency. Claim is made that where individuals have a right to bargain for themselves, as is claimed here, it necessarily follows that the union could not be the sole or exclusive bargaining agency, but that where collective bargaining is involved for a group of persons, such as the union members, the company recognized the union as the sole and exclusive collective-bargaining agency for the group. The company makes distinction between individual bargaining and group bargaining, claiming that collective bargaining applies only to group bargaining. It is argued the trial court failed to recognize this distinction, and for this reason made findings of fact which failed to justify the conclusion reached. The company at no time felt under obligation, nor did it intend, to bargain with the union as the sole and exclusive bargaining agency of all of the production and maintenance employees of the company at its Racine plant. This was admitted by the president of the company, who testified that the company gave the union sole group collective-bargaining rights but not individual bargaining rights, which were specifically provided for in the agreement. The company, by inference at least, admits it could not bargain with several groups separately, as this would constitute collective bargaining with each group, but claim is made it can bargain with any number of individuals who desire to bargain individually and separately so long as it does its collective bargaining with a single or sole collective-bargaining agency for those who wish to bargain collectively, without violating the National Labor Relations Act.

We cannot agree with this contention. It could well defeat the purposes of the act. In *National Labor Relations Board v. Sands Mfg. Co.* 306 U. S. 332, 342, 59 Sup. Ct. 508, 83 L. Ed. 682, the court said:

"The legislative history of the act goes far to indicate that the purpose of the statute was to compel employers to bargain collectively with their employees to the end that employment contracts binding on both parties should be made. But we assume that the act imposes upon the employer the further obligation to meet and bargain with his employees' representatives respecting proposed changes of an existing contract and also to discuss with them its true interpretation, if there is any doubt as to its meaning."

In *McQuay-Norris Mfg. Co. v. National Labor Relations Board* (7th Cir.), 116 Fed. (2d) 748; 119 Fed. (2d) 1009, where an employer signed an agreement recognizing a union as the sole collective-bargaining agency for those employees who were affiliated with the union, the court held that such an agreement was in violation of the National Labor Relations Act, and that the union representing a majority of the employees is entitled to exclusive recognition as the bargaining agent not only of the employees who are members of the union but of all employees. The court said that such exclusive recognition as a bargaining agent is not a bargaining matter between the employer and union as soon as it is disclosed to the employer that the union represents the majority of its employees. This answers appellant's contention here. While no election has ever been held, it appears to be undisputed that the union does represent the majority of the employees and the company recognizes this to be true.

In *J. I. Case Co. v. National Labor Relations Board*, 321 U. S. 332, 338, 64 Sup. Ct. 576, 88 L. Ed. 762, which also affected rights and obligations under individual contracts, the court said:

"The very purpose of providing by statute for the collective agreement is to supersede the terms of separate agreements of

employees with terms which reflect the strength and bargaining power and serve the welfare of the group. Its benefits and advantages are open to every employee of the represented unit, whatever the type or terms of his pre-existing contract of employment."

The court also said:

"Individual contracts, no matter what the circumstances that justify their execution or what their terms, may not be availed of to defeat or delay the procedures prescribed by the National Labor Relations Act looking to collective bargaining, nor to exclude the contracting employee from a duly ascertained bargaining unit; nor may they be used to forestall bargaining or to limit or condition the terms of the collective agreement."

See also *National Licorice Co. v. National Labor Relations Board,* 309 U. S. 350, 60 Sup. Ct. 569, 84 L. Ed. 799; *National Labor Relations Board v. Newark Morning L. Co.* (3d Cir.) 120 Fed. (2d) 262; and *National Labor Relations Board v. Sands Mfg. Co.* 306 U. S. 332, 59 Sup. Ct. 508, 83 L. Ed. 682.

During the entire negotiations with the union the company was meticulous in preserving its claimed right that it did not have to deal with the union as the sole bargaining agent. Before it would negotiate with the union as the collective-bargaining agency it demanded the letter or contract of February 6, 1937, when it was the duty of the company at that time to recognize and deal with the union as the sole bargaining agent for all production and maintenance employees of the company. The union was required to negotiate on the question of whether it was the sole bargaining representative of all employees for the purpose of collective bargaining, and the result of such negotiation was an attempt to relieve the company from complying with the terms of the National Labor Relations Act. This would defeat the purposes of the act. "Exclusive representatives" for the purpose of collective bargain-

ing under the act means the sole and exclusive bargaining agency of all the employees it represents for the purpose of bargaining as to rates of pay, wages, hours of employment, or other conditions of employment.

Appellant contends that recognition of the right of individual employees to deal with the company is a separable part of the agreement, and that the remainder of the agreement, in any event, is valid and enforceable. Collective bargaining is a continuing and developing process by which, under present law, the relationship between employer and employee is to be molded, and the terms and conditions of employment progressively modified along lines mutually satisfactory to all concerned. Changing conditions require continuing collective bargaining and changed contracts of employment. The written contract of yesterday does not become a final and permanent result. *National Labor Relations Board v. Newark Morning L. Co.* (3d Cir.) 120 Fed. (2d) 262.

The company cannot by contract destroy the status of an exclusive bargaining agency created by statute. The terms of the contract being in direct conflict with the statute, the statute governs, and the contract is of no effect.

*By the Court.*—Motion to dismiss appeal denied. Judgment affirmed.