**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DARLINGTON VENEER COMPANY, Inc., Respondent.**

**No. 7194.**

United States Court of Appeals Fourth Circuit.

Argued June 15, 1956.

Decided Aug. 20, 1956.

Irving M. Herman, Atty., National Labor Relations Board, Washington, D.

C. (Theophil C. Kammholz, Gen. Counsel; David P. Findling, Associate Gen. Counsel; Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frederick U. Reel, Atty., National Labor Relations Board, Washington, D. C., on brief), for petitioner.

P. Dalton Kennedy, Jr., Charlotte, N. C., for respondent.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and BARKSDALE, District Judge.

PARKER, Chief Judge.

This is a petition to enforce an order of the National Labor Relations Board which found the Darlington Veneer Company, Inc., guilty of unfair labor practices and refusal to bargain, in violation of sections 8(a) (1), 8(a) (3), and 8(a) (5) of the Labor Management Relations Act, 29 U.S.C.A. § 158(a) (1, 3, 5), and ordered the company to cease and desist from such practices, to reinstate employees improperly discharged and to bargain in good faith as required by the act. The company consents that the cease and desist order be enforced with respect to the 8(a) (1) violations and that the employee Hule, found to have been discharged in connection therewith, be reinstated. It denies, however, that it has refused to bargain as required by the act or that the strike which resulted in the replacement of the other employees whose reinstatement was ordered was caused by refusal to bargain or other unfair labor practice on its part. It accordingly asks that the provisions of the order requiring it to bargain and to reinstate these employees be set aside.

The facts are set forth at length and correctly in the report of the trial examiner. Those necessary to an understanding of the points here involved may be stated briefly as follows: The production and maintenance employees of the company were organized for the purposes of collective bargaining pursuant to an organizational campaign commenced in October 1953. An election was held in April 1954 and a union was chosen as bargaining representative of these employees. The evidence shows that the company

was opposed to the union's coming into its plant and that the 8(a) (1) violations and the discharge of Hule resulted from this opposition. Following the selection of the union as bargaining representative, it submitted a proposed agreement to the company containing among other things a provision for a dues checkoff, which, when authorized by the individual employees, was to be irrevocable for the duration of the contract but not to exceed 12 months. The company submitted counter proposals, one of which accepted the checkoff except that it made the authorization of each employee revocable at his will and added a provision for the automatic nullification of the contract if the number of checkoff authorizations should fall below 50% of the number of employees. That provision was as follows:

> "It is agreed that in the event the number of check-off authorizations becomes less than fifty (50) percent of the number of employees in the bargaining unit this contract shall become null and void."

Another of the company's counter proposals was one requiring ratification of the contract by secret vote of the company's employees as a prerequisite to its validity. That provision was as follows:

> "This contract is subject to, and shall become effective on the day and year first above written only after ratification by the employees of the Darlington Veneer Company, Inc., by secret ballot of employees in the bargaining unit and ratified by a majority of the employees voting in such balloting. The time and place of such ratification vote shall be arranged by agreement between the company and the union, and may be conducted on company premises."

The union objected to these provisions as illegal and improper, stated that it would never accept them and refused to submit counter proposals relating thereto. The company insisted on both provisions and gave the union clearly to understand that they must be a part of any contract to which it would agree. That they were put forward in the thought that they would not be accepted and for the purpose of avoiding and not arriving at an agreement, is indicated by the fact that, when the union proposed to abandon its request for a checkoff so that agreement might be reached on other matters, the company refused to accept the proposal and insisted that the checkoff remain a part of the contract, although that provision was one entirely for the benefit of the union and was being given up only because the company was insisting on tacking the nullification clause onto it. When negotiations had accomplished nothing over a three months period as a result of the company's insistence on these ratification and nullification clauses, the employees on September 20, 1954, went on a strike which was called off on the following day, September 21, and the employees returned to work on September 22. The company refused to reinstate 23 of them on the ground that their places had been filled. Subsequent negotiations failed to result in a contract because of the company's insistence upon these ratification and nullification provisions.

■ The Board sustained the finding of the trial examiner that the company violated section 8(a) (5) of the Act, 29 U.S.C.A. § 158(a) (5), by insisting that any bargaining contract with the union contain the ratification and nullification clauses above quoted and that the employees who went out on strike because of this unfair labor practice on the part of the company were entitled to reinstatement. We agree with the Board. By insisting on the ratification clause, the company was attempting to bargain, not with respect to wages, hours or conditions of employment, but with respect to the authority of the duly certified representative of the employees to represent them, a matter fixed by statue. 29 U.S.C.A. § 159. By insisting on the nullification clause, it was attempting to provide for nullification of the results of bargaining by engrafting thereon a condition subsequent having relation, not

to the subject matter, but to the collection of its dues by the bargaining union. The statute does not require that a majority of the employees, or any of them, belong to the bargaining union. The nullification clause would require not only that a majority belong to the union but that they have in effect checkoff agreements for the payment of their union dues.

■ We are not impressed by the argument that these clauses are a proper means of giving a voice to minority groups of employees.[1] The purpose of collective bargaining is to fix wages, hours and conditions of work by a trade agreement between the employer and his employees. N. L. R. B. v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632, 638. This can be done satisfactorily only if a bargaining agent is selected to represent all the employees with full power to speak in their behalf. The purpose of the statute would be largely frustrated if the results of bargaining must be submitted to a vote of the employees, with all the misunderstandings and cross currents that would inevitably arise in an election of that sort. Likewise the effectiveness of the bargaining and the stability of relationships resulting therefrom would be to a large extent destroyed if trade agreements were made dependent for their continuity upon the state of the checkoff authorizations.

■ We do not mean to say that the ratification and nullification provisions would not be legal and valid if agreed upon by the parties, nor that the mere advancing of such proposals is of itself an unfair labor practice. Cf. Allis Chalmers Mfg. Co. v. N. L. R. B., 7 Cir., 213 F.2d 374. We think, however, that the insistence upon such provisions as a condition of entering into any agreement is so unreasonable when objected to by the other party as to furnish of itself a sufficient basis for the finding by the Board of failure to bargain in good faith; and particularly is this true in this case when considered in connection with the company's insistence on retaining the checkoff when the union offered to withdraw the provision relating thereto. The bargaining required by the act does not mean mere talk with the purpose of avoiding agreement, but a good faith effort to reach agreement about matters which are the proper subjects of bargaining, i. e. "rates of pay, wages, hours of employment, or other conditions of employment". N. L. R. B. v. Truitt Mfg. Co., 351 U.S. 149, 76 S.Ct. 753; N. L. R. B. v. Tower Hosiery Mills, 4 Cir., 180 F.2d 701, 705; N. L. R. B. v. Highland Park Mfg. Co., supra, 4 Cir., 110 F.2d 632, 637. As said by this court in the case last cited:

"The requirement to bargain collectively is not satisfied by mere discussion of grievances with employees' representatives. It contemplates the making of agreements between employer and employee which will serve as a working basis for the carrying on of the relationship. The act, it is true, does not require that the parties agree; but it does require that they negotiate in good faith with the view of reaching an agreement if possible; and mere discussion with the representatives of employees, with a fixed resolve on the part of the employer not to enter into any agreement with them, even as to matters as to which there is no disagreement, does not satisfy its provisions. 'The Act contemplates the making of contracts with labor organizations. That is the manifest objective in providing for collective bargaining'. Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 236, 59 S.Ct. 206, 220, 83 L.Ed. 126. 'The legislative history of the Act goes far to indicate that the purpose of the statute was to compel employers

1. When the Labor Management Relations Act of 1947 was before Congress, a proposal for a referendum on the employer's last proposal before a strike could be called "was rejected on the merits". International Union, etc. v. O'Brien, 339 U.S. 454, 457, 458, note 5, 70 S.Ct. 781, 783, 94 L.Ed. 978.

to bargain collectively with their employes to the end that employment contracts binding on both parties should be made'. National Labor Relations Board v. Sands Mfg. Co., 306 U.S. 332, 342, 59 S.Ct. 508, 513, 83 L.Ed. 682.

"The duty imposed by the statute was well expressed by Judge Sibley, speaking for the Circuit Court of Appeals of the 5th Circuit in Globe Cotton Mills v. National Labor Relations Board, 5 Cir., 103 F.2d 91, 94, as follows: 'We believe there is a duty on both sides, though difficult of legal enforcement, to enter into discussion with an open and fair mind, and a sincere purpose to find a basis of agreement touching wages and hours and conditions of labor, and if found to embody it in a contract as specific as possible, which shall stand as a mutual guaranty of conduct, and as a guide for the adjustment of grievances.' "

 It is well settled that an employer may not insist upon including as a condition of the contract terms having no relation to the statutory duty to bargain. Thus, in Hartsell Mills Co. v. N. L. R. B., 4 Cir., 111 F.2d 291, evidence supporting a finding of unfair labor practice in refusal to bargain was found in the employer's refusal to embody agreements in a written contract and in insisting upon a withdrawal of charges as a condition of further negotiations. A similar holding was made in American Laundry Mach. Co. v. N. L. R. B., 6 Cir., 174 F.2d 124, 76 N.L.R.B. 981. In N. L. R. B. v. Pecheur Lozenge Co., 2 Cir., 209 F.2d 393, 403, 404, it was held an unfair labor practice to insist that a strike be called off as a condition of bargaining. In N. L. R. B. v. Corsicana Cotton Mills, 5 Cir., 178 F.2d 344, insistence that the union notify nonunion employees and permit them to vote on

every decision of the union was held to be a refusal to recognize the union as bargaining agent. And it has been held an unfair labor practice to insist that the union register with a state court so as to be amenable to suit, N. L. R. B. v. Dalton Telephone Co., 5 Cir., 187 F.2d 811, that the union charter a local organization, N. L. R. B. v. Aldora Mills, 5 Cir., 180 F.2d 580; 79 N.L.R.B. 1, or that the union organize the employees of competitors in the industry. N. L. R. B. v. George P. Pilling & Son Co., 3 Cir., 119 F.2d 32, 38. In the case last mentioned it was said: "Sec. 7 of the Act guarantees to the employees the right to bargain collectively through a representative of their own choosing and it is not for the employer to restrain or interfere with the exercise of that right by insisting upon unwarranted conditions". Here the employer was insisting upon imposing conditions not authorized by the statute upon the validity of agreements entered into by the bargaining agent, which would amount to a limitation upon the authority conferred by statute upon the bargaining agent. The statute contemplates the making of agreements by representatives of the employees, not by the employees themselves,[2] giving " 'statutory approval to the philosophy of bargaining as worked out in the labor movement in the United States.' " N. L. R. B. v. American National Insurance Company, 343 U.S. 395, 408, 72 S.Ct. 824, 831, 96 L.Ed. 1027; Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 346, 64 S.Ct. 582, 88 L.Ed. 788.

What was said by the Trial Examiner with reference to the ratification clause states succinctly and correctly the basic objection to both clauses upon which the company insisted, i. e. they seek to engraft upon the collective bargaining which the statute requires conditions which the statute does not authorize.

---

2. A provision of a bargaining contract recognizing the right of employees not members of the union to bargain individually with the employer is condemned as violative of the statutory provision making the bargaining agent the exclusive representative for bargaining purposes of all the employees. International Union etc. v. J. I. Case Co., 250 Wis. 63, 26 N.W.2d 305, 170 A.L.R. 933 and note.

Referring to the ratification clause, he said:

"Respondent's ratification clause laid down as a condition to the effectiveness of the agreement that it be ratified by a majority of the employees participating in an election to be conducted among the employees in the unit. It is clear, therefore, that the clause intrinsically has no reference to terms or conditions of employment, but merely prescribes a nonstatutory manner of determining whether the terms and conditions fixed in the agreement should become operative; in short, a nonstatutory condition precedent to the operation of the terms and conditions of employment. However, as the Board has held, 'collective bargaining as contemplated by the Act is a procedure looking towards the making of a collective agreement by the employer with the accredited representatives of his employees, concerning wages, hours of service, and other working conditions. It must be presumed that when the Respondent's employees chose the Union as their representative for the purpose of collective bargaining they did so for the purpose of having *it* make a collective agreement for them with the Respondent. Employees' designation of a collective bargaining representative and the Board's certification thereof would be futile and meaningless, could an employer, shortly thereafter, at any designated stage of the bargaining procedure, demand proof that the exclusive representative was acting in accordance with the desires of the employees.' Union Mfg. Co., 27 N.L.R.B. 1300–1306. And, as the Board recently repeated, both it and the courts have held, the vice in such conduct is that the employer thereby attempts to detract from the authority of the chosen bargaining agent and, in effect, refuses to accord the majority representative of the employees that exclusive recognition which the statute makes mandatory."

For the reasons stated, we think that the Board was fully warranted in finding that the company had failed to bargain in good faith with the bargaining representative of its employees. Its finding that this failure was the cause of the strike is amply supported by the evidence and the order directing the reinstatement of the employees who had gone out on strike was proper.

Order enforced.