Sharon GROSSE, Plaintiff-Appellant,

v.

PROTECTIVE LIFE INSURANCE COMPANY, Defendant-Respondent-Petitioner.

Supreme Court

*No. 91–0382. Oral argument November 2, 1993.—Decided March 24, 1994.*

(Also reported in 513 N.W.2d 592.)

For the defendant-respondent-petitioner there were briefs by *Carroll Metzner, Stephen Ehlke* and *Bell, Metzner, Gierhart & Moore, S.C.,* Madison and oral argument by *Carroll E. Metzner.*

For the plaintiff-appellant there was a brief by *Briony Jean Foy, Larry I. Hanson* and *Jenswold, Studt, Hanson, Clark & Kaufmann,* Madison and oral argument by *Briony Jean Foy.*

WILLIAM A. BABLITCH, J. The plaintiff Sharon Grosse is seeking to collect life insurance proceeds from a policy issued to her deceased husband by defendant Protective Life Insurance Company (Protective Life). Protective Life denied coverage, claiming that there was a material change in the health of Mr. Grosse (a previously undiagnosed lung cancer) between the time of his application and the time he paid his first premium, a fact which for purposes of this review is undisputed. At trial, Ms. Grosse attempted to stop Protective Life from putting this fact into evidence, asserting that the statutes preclude Protective Life from doing so. The court of appeals agreed with Ms. Grosse, concluding that Protective Life was statutorily bound by the medical examination that Protective Life directed Mr. Grosse to undergo before it decided whether to offer him insurance. In that exam,

99

the medical examiner concluded that he knew of no reason why Mr. Grosse should not be accepted for insurance. Protective Life appeals. We agree with the court of appeals. We interpret the statute to mean that unless an insurance company adopts rules specifically providing that its medical examiners are not authorized to declare the proposed insured acceptable for insurance, the company cannot assert the defense of a subsequent medical condition. Protective Life did not adopt such formal rules. Accordingly, we affirm the court of appeals and remand for a new trial.

The following facts are relevant to this appeal. Michael Grosse applied for life insurance with Protective Life on October 19, 1987. Protective Life requested that he submit to a medical examination from an independent medical examiner obtained by Protective Life. The results of the examination were reported to Protective Life on a standard medical examination form provided by the company. The form consisted of three sections. The first section required the examiner to ask the applicant various questions regarding the applicant's medical history, and to record the answers with explanation if needed. The questions included inquiries as to tobacco, alcohol and other drug use, personal and family medical history, and physical exercise habits. In this section Mr. Grosse revealed that he had quit smoking a pipe and cigars in 1985.

The second section required the medical examiner to report on the physical characteristics of Mr. Grosse including his height and weight, his blood pressure, and a urinalysis. Two portions of this section were crossed out and left unanswered without explanation.

The third section of the exam was titled, "Examiner's Confidential Report." This section required the examiner to give the name of the applicant and the

name of the agent requesting the exam. In addition, two questions were presented to the examiner with regard to the applicant's insurability. The first question read, "[g]ive your confidential opinion of person examined as an insurance risk with reference to reliability of medical history as given, appearance, etc. (Write supplementary letter if necessary)." In response to this question, it appeared that the medical examiner entered only a dash. The second of the two questions read, "IMPORTANT. Do you suspect or know of any reason not already disclosed why this risk should not be accepted for insurance?" To this question, the medical examiner answered "No."

On March 30, 1988, following the exam, Mr. Grosse was informed by Protective Life that a policy could be issued. Mr. Grosse did not communicate his acceptance at this time.

On April 11, Mr. Grosse saw a pulmonary specialist for a recurring cough and shortness of breath. The medical records indicate that the doctor made a preliminary diagnosis of lung cancer. There is nothing in the record, however, to indicate that the doctor informed Mr. Grosse of this preliminary diagnosis.

On April 12, the same day a biopsy was performed on Mr. Grosse's lung, Mr. Grosse accepted the policy.

The next day, April 13, Mr. Grosse was informed that he suffered from small cell cancer of the lungs. He did not inform Protective Life of this diagnosis, and the policy was issued on that day. On April 20, Protective Life delivered the policy to Mr. Grosse and on April 25, Mr. Grosse paid the first premium.

Mr. Grosse died of lung cancer on December 13, 1988. Protective Life denied Sharon Grosse's claim for the proceeds of her husband's insurance policy claiming that Mr. Grosse underwent an undisclosed,

significant change of health between the date of his medical exam on February 13, 1988, and the date his first premium was paid, April 25, 1988. Protective Life based its denial on the following declaration which appeared in the application that Mr. Grosse had completed:

(c) No insurance shall take effect unless: (1) a policy is delivered to the Owner; (2) the full first premium is paid while the proposed insured(s) (are) alive; and (3) there has been no change in health and insurability from that described in this application.

Ms. Grosse subsequently brought an action against Protective Life. During the jury trial, Ms. Grosse made a motion in limine to estop Protective Life from introducing evidence as to Mr. Grosse's change in health. She did this pursuant to sec. 632.50, Stats., which states in full:

If under the rules of any insurer issuing life insurance, its medical examiner has authority to issue a certificate of health, or to declare the proposed insured acceptable for insurance, and so reports to the insurer or its agent, the insurer is estopped to set up in defense of an action on the policy issued thereon that the proposed insured was not in the condition of health required by the policy at the time of issue or delivery, or that there was a preexisting condition not noted in the certificate or report, unless the certificate or report was procured through the fraudulent misrepresentation or nondisclosure by the applicant or proposed insured.

In opposition to this motion, Protective Life asserted that sec. 632.50, Stats., was not applicable because the medical examiner's report was used for

information purposes only, and that he had no authority to bind the company or declare Mr. Grosse acceptable for insurance. In support of this assertion, Protective Life cited to declaration (b) of the application:

(b)     No agent or medical examiner can make, alter or discharge any contract, accept risks, or waive the Company's rights or requirements. No information or statement made available or given by or to the agent or examiner shall bind the Company unless put in writing in this application.

In addition, Protective Life's chief underwriter testified that Protective Life had an unwritten company policy prohibiting anyone other than an underwriter from binding the company or declaring an applicant fit for insurance.

The circuit court denied Ms. Grosse's motion in limine finding conclusive the chief underwriter's testimony that the medical examiner did not have authority to declare insurability or issue a certificate of health. Protective Life was therefore allowed to introduce evidence at trial of Mr. Grosse's change in health. Following the testimony and closing arguments, the jury affirmatively answered the special verdict question, "[d]id Michael Grosse fail to fulfill the declarations made by him in his insurance application?" The judge then entered judgment dismissing the plaintiff's action and awarding costs to the defendant.

Ms. Grosse subsequently appealed on the grounds that the circuit court erred in allowing Protective Life to introduce evidence regarding Mr. Grosse's change in health in violation of sec. 632.50, Stats. The court of appeals reversed. In its analysis, the court examined

how a 1975 amendment affected the statute's intended purpose. The court concluded that the effect of the change was to protect an insurance company from estoppel under the statute if its medical examiner issued a certificate of health or declaration of insurability without having been authorized by the company. The court held, however, that Protective Life had authorized its medical examiner to declare Mr. Grosse fit for insurance by soliciting the medical examiner's opinion in Mr. Grosse's medical report.

Further, the court of appeals held that Mr. Grosse's alleged fraud in failing to disclose his change in health did not vitiate coverage under the policy. The court concluded that under sec. 632.50, Stats., Mr. Grosse's alleged fraud would only relieve Protective Life of coverage if the fraud was done to procure the medical examiner's certificate of health or declaration of insurability. Since no such claim had been made, the court found that fraud was not a defense. Based on these determinations, the court held that sec. 632.50 was applicable, and it remanded so that the statute could be applied at trial.

The issue we are confronted with is whether Protective Life is estopped under sec. 632.50, Stats., from asserting as a defense Mr. Grosse's change of health between the time of his medical exam and payment of his premium. In resolving this issue, we must answer three questions: first, whether the medical examiner had the authority to issue a certificate of health or declaration of insurability; second, if so, whether the medical examiner's report constituted such a certificate; and, third, whether Mr. Grosse's alleged fraud in paying the premium without disclosing his change in health vitiates Protective Life's coverage.

■

The resolution of this issue requires us to interpret sec. 632.50, Stats. The interpretation of a statute is a question of law which we review *de novo. Revenue Dept. v. Milwaukee Brewers,* 111 Wis. 2d 571, 577, 331 N.W.2d 383 (1983). In construing the statute, we must first determine whether the legislative intent is clear from its plain language. *Voss v. City of Middleton,* 162 Wis. 2d 737, 749, 470 N.W.2d 625 (1991).

Section 632.50, Stats., states:

> If under the rules of any insurer issuing life insurance, its medical examiner has authority to issue a certificate of health, or to declare the proposed insured acceptable for insurance, and so reports to the insurer or its agent, the insurer is estopped to set up in defense of an action on the policy issued thereon that the proposed insured was not in the condition of health required by the policy at the time of issue or delivery, or that there was a preexisting condition not noted in the certificate or report, unless the certificate or report was procured through the fraudulent misrepresentation or non-disclosure by the applicant or proposed insured.

The first question is whether Protective Life's medical examiner had the authority to issue the certificate referred to in the statute. Protective Life contends that the statute only applies when an insurance company has enacted formal rules authorizing its medical examiners to declare an applicant fit for insurance. Ms. Grosse, on the other hand, contends that the statute applies even when an insurance company has no formal rules but authorizes its medical examiner to declare an applicant fit for insurance by soliciting the examiner's opinion in a written medical report. Since each interpretation is equally plausible under the lan-

guage of the statute, we find that sec. 632.50 is ambiguous on its face. *See In Interest of J.A.L.,* 162 Wis. 2d 940, 962, 471 N.W.2d 493 (1991) (holding that a statute is ambiguous on its face if it is capable of being construed in two different ways by reasonably well-informed persons). We thus examine extrinsic sources of legislative intent to aid us in our construction. *See Voss,* 162 Wis. 2d at 749.

The original statute created in Chapter 507, sec. 4202, Laws of 1911, was derived from an Iowa statute enacted in 1907. *Platke v. John Hancock Mut. Life Ins. Co.,* 27 Wis. 2d 1, 5, 133 N.W.2d 277 (1965). Aside from minor amendments, including a renumbering to sec. 209.07, Stats., the statute remained essentially the same until 1975.[1] In *Frozena v. Metropolitan Life Ins. Co.,* 211 Wis. 373, 376, 247 N.W. 333 (1933), a case decided under sec. 209.07, we stated the effect of the statute:

> There seems to be no escape from the conclusion that where a medical examination is had and a report made that the applicant is a fit subject for insurance, an estoppel arises against the company in the absence of fraud or deceit practiced by the insured upon the medical examiner in order to induce a favorable report . . ..

---

[1] Section 209.07, Stats., stated:

If the medical examiner of any life or disability insurance company shall issue a certificate of health, or declare the applicant a fit subject for insurance, or so report to the company or its agent under the rules and regulations of such company, it shall thereby be estopped from setting up in defense of an action on a policy issued thereon that the insured was not in the condition of health required by the policy at the time of the issue or delivery thereof, unless the same was procured by or through the fraud or deceit of the insured. This section shall apply to fraternal benefit societies.

We reaffirmed this in *Platke,* and stated that the underlying purpose of the statute could be learned from *Weimer v. Economic Asso.,* 79 N.W. 123 (Iowa 1899) in which the Iowa Supreme Court stated:

> The very evident purpose of the statute is to prevent the defeat of recovery on any policy where the company has, by its skilled agent, examined and passed upon the fitness of the applicant for insurance. The estoppel is directed to inquiry as to the condition of health, and it is quite immaterial what representations have been made or warranties given. The company, having investigated, and for itself ascertained and declared the condition of the assured to be such as required by its rules and regulations, will not be permitted to interpose as a defense the physical infirmities of the deceased, of which it knew, or might have known, as the result of its examination; and the fraud or deceit referred to is that of procuring the report or certificate of the physician, and not the policy, . . . *Platke,* 27 Wis. 2d at 5.

These decisions make clear that sec. 209.07, as interpreted, prohibited an insurance company from asserting a change in health defense to a claim on a life insurance policy when the insured had been examined and declared fit for insurance by the company's medical examiner. Disputes which arose under sec. 209.07 focused primarily then on whether a medical examiner's comments constituted such a certificate or declaration.

Protective Life contends that the 1975 amendment significantly affected a medical examiner's ability to declare an applicant fit for insurance and thus the focus of this dispute under sec. 632.50, Stats., is different from a dispute under sec. 209.07. Protective Life argues that under sec. 632.50 we must first determine

107

whether a medical examiner has the authority to issue a certificate of health before we may determine whether such a certificate was issued. It contends that under the new statute its medical examiner could not have declared Mr. Grosse fit for insurance because he had no authority from Protective Life to do so. Protective Life directs us to the first sentence of the new statute: "[i]f under the rules of any insurer issuing life insurance, its medical examiner has authority to issue a certificate of health, or to declare the proposed insured acceptable for insurance, and so reports to the insurer or its agent . . .." and argues that this language evinces an intent by the legislature to make the statutory estoppel less severe against insurance companies. The amendment does this, Protective Life argues, by limiting the applicability of the estoppel to cases in which the insurance company has adopted formal rules authorizing the medical examiner to issue certificates of health or declarations of insurability.

To state Protective Life's argument in another manner, Protective Life wants us to interpret the statute to say that as long as it does not have any rules with respect to the authority of its medical examiners, it can never be estopped from asserting the change in health defense. In essence, it is contending that as long as it does nothing, it can never have estoppel asserted against it. We do not agree. Such an interpretation would not be a "less severe" application of sec. 209.07, Stats.,[2] it would be a complete evisceration of the stat-

---

[2] *See* the ILRC committee comment, Chapter 375, Laws of 1975, which states that the amendment has the effect of making the statute "less severe as against the insurer . . .."

ute. That does not appear to be what the legislature intended.[3]

In reaching this conclusion, we look to the actual revision of sec. 209.07, Stats., and the resulting product, sec. 632.50. The revision occurred in 1975 as part of a major revision of Wisconsin insurance law. The Insurance Law Revision Committee (ILRC), a Legislative Council committee created by the legislature in Chapter 406, Laws of 1965, was responsible for thoroughly studying and revising the insurance laws, a process which continued for more than 10 years.

The minutes of the ILRC committee during the revision process contain several references to Chapter 632, Stats. The most explicit reference to sec. 632.50 is an ILRC committee note:

> This section is a substantially edited version of s. 209.07. Section 632.71 applies it to disability insurance, as s. 209.07 does. The preexisting condition clause is added, not with the intention of extending but rather of clarifying the meaning of the preceding clause. It is made *less severe* as against the insurer by binding the insurer only if the medical examiner is acting under the insurer's rules. (Emphasis added). Chapter 375, Laws of 1975.

---

[3] The dissent suggests this same interpretation. To interpret the statute in this way would mean that the legislature revised the statute so as to effectively make it inapplicable in all circumstances. Such an interpretation runs contrary to the committee comment which states the revision was meant to make the statute "less severe." Had the legislature intended to make the statute inapplicable, it clearly would have repealed it. Although we must be guided by the plain language of the statute as the dissent suggests, we are prohibited from construing a statute so as to produce absurd results. *See Estate v. Evans,* 28 Wis. 2d 97, 101, 135 N.W.2d 832 (1965).

An official comment by a legislatively created committee is valid evidence of legislative intent. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 543, 345 N.W.2d 389 (1984). Protective Life relies heavily on this comment and argues that the language in the last sentence, "only if the medical examiner is acting under the insurer's rules . . ." indicates the committee's intention to protect an insurer from estoppel unless the insurer has adopted formal rules authorizing the medical examiner to issue a certificate of health or declaration of insurability. Grosse contends that the amendment to the statute is simply a semantical relocation of the language concerning a company's rules and regulations.

Although we do not adopt the construction offered by Protective Life, we do not agree with Grosse that the amendment had no other effect but to relocate particular language. The committee comment indicates that the amendment in 1975 made the statutory estoppel less severe on insurance companies, a statement with which we agree. However, other extrinsic evidence considered with the committee comment convinces us that the statutory estoppel is activated unless an insurance company has enacted formal rules prohibiting its medical examiners from issuing certificates of health or declaring applicants fit for insurance.

The evidence referred to is a paper presented by George A. Hardy, Legislative Counsel to the Northwestern Mutual Life Insurance Company, to the Association of Life Insurance Counsel on May 9, 1977, titled, "The Life Insurance Law of Wisconsin: Revision of 1967–77." Mr. Hardy was a member of the Industry Advisory Committee (IAC), a committee created by the same legislation as the ILRC and intimately involved in the revision process. The IAC consisted of members

of the insurance industry. Its purpose as explained in the minutes of the September 16, 1969, ILRC meeting was:

> to perform a dual function—assist the committee in its deliberations when it has the draft before it and supply technical help to the staff in its preparation of the draft.

In his introduction, Mr. Hardy also explained briefly the role of the IAC:

> After the industry had a chance to study each draft and suggest improvements, Kimball [the director of the ILRC] would usually prepare a second draft. He would also meet with the Industry Advisory Committee for all-day discussions about some of the drafts and at times the Advisory Committee met on its own. In some cases this process was repeated several times as third, fourth and fifth drafts appeared. Hardy, at 427.

Further, he stated his own involvement as an IAC member, "[a] separate Industry Advisory Committee was provided for and some members of that committee became quite active in the revision process, including the author of this paper." Hardy, at 426.

Mr. Hardy's status as an IAC member directly involved in the revision process indicates that he possessed valuable insight into the intent behind the insurance revisions, especially those involved with his own field of life insurance. We examine then, Mr. Hardy's interpretation of sec. 632.50, Stats.

In the section of the paper dealing with a medical examiner's certificate of health, Mr. Hardy first noted that the insurance industry had been concerned with the Wisconsin Supreme Court's past interpretation of

111

sec. 209.07, Stats., and he commented that the industry felt that the 1975 changes were important.

After setting forth both statutes, sec. 209.07 and sec. 632.50, Stats., Mr. Hardy cited our decision in *Platke,* 27 Wis. 2d 1, in which we determined that a medical examiner's answer to the question, "[i]n your opinion is there anything detrimental in the habits, surroundings or occupation of the proposed insured?" constituted a certificate of health or a declaration of fitness. Specifically, Mr. Hardy cited with praise Chief Justice Currie's dissent in which the Chief Justice questioned how a mere statement of findings by a medical examiner after an examination of an applicant could constitute a certificate of health. *Platke,* 27 Wis. 2d at 11.

In addition, Mr. Hardy referred to a Marquette Law Review comment which concluded that *Platke* seemed to indicate the court's step in the direction of finding that a medical examiner alone, without any real judgment of the insurance risk, would activate the estoppel in sec. 209.07, Stats. *See* David W. Leifker, Comment, *Insurance—Medical Certificates of Health And Statutory Estoppel,* 49 Marq. L. Rev. 785 (1966). After examining other supreme court decisions on this topic, Mr. Hardy stated:

> In view of the trend reflected in the *Platke* case and prior decisions, the industry suggested to Professor Kimball that Section 209.07 be deleted from the code or revised to reflect the logic of Justice Currie's opinion. As reenacted in Section 632.50 we believe that the provision is greatly improved and that the trend reflected in the *Platke* case may not continue.
>
> In order to secure the benefits of the new Section 632.50 *a life insurance company must*

112

*presumably adopt and apply a rule specifically providing that its medical examiners are not authorized to issue a certificate of health or declare the proposed insured acceptable for insurance. Hardy* at 457 (Emphasis added).

We afford Mr. Hardy's interpretation of sec. 632.50, Stats., great weight. We recognize that statements from nonlegislative sources do not carry as much probative value as official statements. However, we have stated:

When, . . . a contemporaneous report or other document from a nonlegislative agency or even a private party forms a vital link in the chain of legislative history of a particular statute, such unofficial report or other document may be used to determine the legislative intent behind the statute. *Ball v. District No. 4,* 117 Wis. 2d at 545.

This report, presented contemporaneously with the insurance revisions, from an industry member who was intimately involved in the revision process, is that vital link. When examined along with the committee note, Mr. Hardy's comments provide evidence that the 1975 amendment made the estoppel less severe on insurance companies by allowing companies to avoid the estoppel by enacting formal rules prohibiting their medical examiners from issuing certifications of health or declarations of insurance. We adopt this interpretation. As stated previously, Protective Life's interpretation would not make the statute "less severe," it would completely eviscerate it.

Applying this interpretation to the facts in the record, Protective Life did not have any written rules

prohibiting its medical examiners from declaring applicants fit for insurance. The only evidence Protective Life presented regarding the medical examiner's authority was the chief underwriter's testimony and declaration (b) in the application for life insurance which stated:

> (b)    No agent or medical examiner can make, alter or discharge any contract, accept risks, or waive the Company's rights or requirements. No information or statement made available or given by or to the agent or examiner shall bind the Company unless put in writing in this application.

In his testimony, the chief underwriter admitted that the company did not have any formal written rules regarding the authority given to medical examiners and stated that it was simply unwritten company policy. Further, the declaration cited above which is found in the application cannot be characterized as a rule prohibiting the medical examiner from issuing a certificate of health. The declaration simply states that the medical examiner cannot bind the company in any way. Binding a company is not analogous to allowing a medical examiner to issue a certificate of insurability. Therefore, we conclude that Protective Life has authorized its medical examiner, through the absence of a rule to the contrary, to declare applicants fit for insurance.

Turning now to the second question, we must determine, as required by sec. 632.50, Stats., whether Protective Life's medical examiner declared Mr. Grosse fit for insurance when he answered question 3 of the confidential portion of the medical report. Since the 1975 amendment only changed a medical examiner's

114

ability to issue a certificate of health but did not change what constitutes a certificate of health, we may look to cases decided under sec. 209.07 to guide our decision.

We have been faced with this question many times under the former statute and have stated that a medical examiner's evaluations must be broad in scope and content, *see Kelly v. Madison National Life Ins. Co.,* 37 Wis. 2d 152, 160, 154 N.W.2d 334 (1967), and that there must be something extra that moves an ordinary or usual examiner's report into a certification of health or insurability, *see Powalka v. State Mut. Life Assurance Co.,* 41 Wis. 2d 151, 156, 163 N.W.2d 162 (1968). In addition, we have made a distinction between simply reporting objective medical data such as pulse and blood pressure, *see Jespersen v. Metropolitan Life Ins. Co.,* 251 Wis. 1, 27 N.W.2d 775 (1947) and evaluations or opinions as to insurability. *See, e.g., Frozena,* 211 Wis. 373 (determining that a medical examiner's characterization of the applicant's risk as "first class" was a declaration of insurability); *Kelly,* 37 Wis. 2d 152 (finding that the written remark, "[a]pplicant appears to be in healthy state at present time" constituted an opinion of fitness for insurability); *Platke,* 27 Wis. 2d 1 (finding that the answer to the question, "[i]n your opinion is there anything detrimental in the habits, surroundings or occupation of the proposed insured?" constituted an opinion of insurability).

Based on the cases decided under sec. 209.07, Stats., and the distinctions between objective findings and subjective evaluations, we conclude that Protective Life's medical examiner declared Mr. Grosse fit for insurance when he answered in the negative, "Do you suspect or know of any reason not already disclosed why this risk should not be accepted for insurance?"

115

This was not a question which required mere objective data; objective data had been requested in the two earlier sections of the exam. This question required the examiner to evaluate Mr. Grosse as an insurance risk and give his opinion as to Mr. Grosse's fitness for insurance. Therefore, we conclude that the medical examiner obtained by Protective Life declared Mr. Grosse fit for insurance.

We turn now to the third question, posted by Protective Life in its alternative argument. Protective Life contends that even if we find that the requirements of sec. 632.50, Stats., are met in this case, the company is protected from the statutory estoppel because Mr. Grosse committed fraud when he failed to disclose his change in health before he paid his first premium, and fraud vitiates coverage. We conclude a defense of fraud is not available to Protective Life in this situation.

██

We have recognized under the old statute, sec. 209.07, Stats., that where there is a certification of health or declaration of insurance, the only defense available to a company is that the applicant fraudulently procured the certificate of health or declaration of insurance. *See Platke,* 27 Wis. 2d at 6. We have stated that the fraud normally available under the former sec. 209.06[4] is unavailable to an insurance company when the medical examiner has issued a certificate of health or insurability. We see nothing in the 1975 amendment which would change this determination. Therefore, since we have found that Protective

---

[4] Section 209.06, Stats., allowed an insurance company to defeat or avoid a life insurance policy when misrepresentations by the proposed insured were false and were made with the intent to deceive or increased the risk or contributed to the loss. This section is now included in sec. 631.11.

Life's medical examiner declared Mr. Grosse fit for insurance the only defense of fraud available to Protective Life is that Mr. Grosse procured the declaration through fraud. Since Protective Life does not raise this as a defense, we do not address it.

Based on our above determinations then, we conclude that Protective Life was estopped under sec. 632.50, Stats., from introducing evidence of Mr. Grosse's change in health as a defense to a claim under the life insurance policy issued to Mr. Grosse.[5] Accordingly, we affirm the court of appeals and remand for a new trial at which sec. 632.50 shall be applied.

*By the Court.*—The decision of the court of appeals is affirmed and cause remanded with directions.

STEINMETZ, J. *(dissenting)*. The majority has ignored a basic rule of statutory interpretation. If a statute is clear on its face, courts do not look to the history of the statute when interpreting it. *See Ervin v. City of Kenosha,* 159 Wis. 2d 464, 473, 464 N.W.2d 654 (1991).

This court interpreted the predecessor to sec. 632.50, Stats., sec. 209.07, very broadly against insurance companies in *Platke v. John Hancock Mut. Life Ins. Co.,* 27 Wis. 2d 1, 133 N.W.2d 277 (1965). This interpretation estopped an insurer from ever asserting the change in condition defense if the insurer's medical examiner issued a certificate of health or its equivalent. In reaction to this decision, the legislature adopted sec. 632.50.

---

[5] Protective Life's reliance on declaration (c) in the application which attempts to void the policy in the event of a change in health is misplaced since the provision is directly contrary to the statute and is thus void. *See International Union v. J.I. Case Co.,* 250 Wis. 63, 73, 26 N.W.2d 305 (1946).

Section 632.50, Stats., states:

> If under the rules of any insurer issuing life insurance, its medical examiner has authority to issue a certificate of health, or to declare the proposed insured acceptable for insurance, and so reports to the insurer or its agent, the insurer is estopped to set up in defense of an action on the policy issued thereon that the proposed insured was not in the condition of health required by the policy at the time of issue or delivery, or that there was a preexisting condition not noted in the certificate or report
> . . ..

This clearly and unambiguously provides that an insurance company is only estopped from asserting a change in condition defense when the insurance company has enacted rules authorizing the medical examiner to issue a certificate of health or to declare the proposed insured acceptable for insurance. In this case, Protective Life has promulgated no such rules. Hence, the trial court properly allowed Protective Life to assert a change in condition defense and to present evidence regarding Mr. Grosse's change in health.

The majority attempts to circumvent the language of the statute by finding the language ambiguous and then examining sources of legislative history. Based on this legislative history, the majority rewrites the statute to estop insurers *unless* they promulgate rules stating that their medical examiners do not have the authority to bind the company. The majority's interpretation is contrary to the plain language of the statute.

This statute is not ambiguous. What more must the legislature say in order to limit estoppel to situations where the medical examiner acts pursuant to rules of the insurance company, than "[i]f under the

118

rules of any insurer issuing life insurance . . ."? Must the legislature say "we really mean it"?

Because the statute is clear and unambiguous on its face, we need not look to legislative history. However, even the legislative history requires a different result than the one reached by the majority. A committee comment, published with sec. 632.50, Stats., in West's Wisconsin Statutes Annotated, explains that the revised version of the statute is intended to estop an insurer only when its medical examiner is acting pursuant to the insurer's rules. "It is made less severe as against the insurer by binding the insurer only if the medical examiner is acting under the insurer's rules."[1]

In this case, the deceased knew that he had cancer before he paid his first premium and before issue or delivery of the policy. Protective Life did not have rules authorizing its medical examiner to issue a certificate of health or declare Mr. Grosse acceptable for insurance. Therefore, the trial court properly held that Protective Life was not estopped pursuant to sec. 632.50, Stats., from presenting evidence to the jury regarding Mr. Grosse's change in health.

---

[1] Contrary to the majority's assertion, my interpretation of sec. 632.50, Stats., will neither eviscerate the statute nor lead to absurd results. Rather, this interpretation will allow an insurance company to decide what weight to place on the decisions of its medical examiners—exactly as this committee note makes clear that the legislature intended. If the insurer promulgates rules stating that its medical examiners have the authority to issue certificates of health or to declare the proposed insured acceptable for insurance, then the insurer will be bound by its medical examiners' decisions. Otherwise, sec. 632.50 will not apply to the insurance company.

I would dissent from the majority opinion and not require the legislature to again change sec. 632.50, Stats., as a reaction to a decision of this court.

I am authorized to state that JUSTICES JON P. WILCOX and JANINE P. GESKE join this dissenting opinion.